LOUDON, assignee, *vs.* COLEMAN, receiver.

1. On a motion to distribute money in the hands of a receiver, where the finding of a jury allowed to certain attorneys a given amount for services in securing and preserving the fund, and to a machinist a given amount, and to the plaintiff in a distress warrant a given amount, the judgment will not be arrested at the instance of the debtor's assignee in bankruptcy, one of the parties to the motion, for any of the following causes : Because the attorneys heretofore claimed for the same service on a previous trial of the same motion, and nothing was allowed them, in which result they, for the time being, acquiesced; because of a misnomer or misdescription in the record; because no execution against the realty covered by the lien of the machinist has issued; because, though the verdict defined the amount of the fund to be recovered by each claimant, it embraced no express finding as to the existence of any lien; because the verdict did not declare preferences or priorities among those in whose favor it was rendered ; because the services of the attorneys in bringing the money into court, or in recovering it for the receiver, were rendered after the debtor was adjudicated a bankrupt; because the plaintiff in the distress warrant had a special lien upon some of the property which produced the fund, and it could not, from the record, be ascertained how much of the fund was produced by that particular property, and how much by other property; because the fund for distribution is, in part, the proceeds of property upon which none of the successful claimants had any lien; because the lien of a machinist takes effect only upon the realty and upon the machinery attached thereto, and the fund now in question was produced by the sale of personal property sold under an order of court, or of the judge, as perishable. None of these matters, in the actual state of the record, are appropriate to a motion in arrest of judgment.

2. In Georgia, a new trial may be moved for after a motion in arrest

of judgment has been overruled; *provided* both motions are made during the term at which the verdict was rendered.

3. Where there are several claimants to a fund in court, and all of them have introduced evidence, the order of argument is subject to regulation by the sound discretion of the judge.

4. Counsel bringing the money into court, or securing the fund for the receiver, are entitled to reasonable compensation as a part of the necessary expenses.

5. Error in the judgment is not cause for new trial if the verdict was correct.

6. Where each of the successful claimants to the fund, claimed, on the record, as a lien creditor, and not otherwise, a verdict awarding to each a given amount is to be construed as finding that the lien exists to that extent, though no mention of any lien be made in the verdict.

7. The charge to the jury on the subject of the lien set up by the machinist, was substantially in conformity to the rulings of this court upon the former writ of error in this case. 59 *Ga.*, 653.

8. Where the lien of a machinist binds the premises to which the machinery was attached, as well as the machinery, and the premises are not the property of the debtor but of his lessor, other creditors of the common debtor have no right to force the machinist to resort to the realty for satisfaction, in order to leave the proceeds of the machinery (sold as personalty) to be applied to debts of inferior dignity in favor of such creditors.

9. Where a stationary engine was sold and put up by a machinist, and, as a part of the contract of sale, it was stipulated that the engine was to be started and put in proper order for running, necessary work done to start it and fit it for running in position was work done in pursuance of the original contract, though said work was charged for in an open account, and the price of the engine itself was covered by drafts, and did not enter into the account. A record of the machinist's lien, made within three months after the work was completed, though not within three months after the sale, was in time.

10. When a machinist's lien was upon, say, one-fourth in value of the whole property sold, the lien attached to one-fourth of the proceeds of sale, and no more. When of this entire fund all was lost except, say, one-third, the lien upon the fund saved was in the like proportion; that is, it was upon one-fourth of the amount saved, and no more.

Judgments. Misnomer. Machinist's lien. Verdict. Bankrupt. Liens. New trial. Practice in the Superior Court. Argument. Fees. Before Judge CRAWFORD. Muscogee Superior Court. May Term, 1878.

In May, 1872, several attachments and an execution, based on the foreclosure of a machinist's lien, were levied upon the property of the Empire Cotton Seed Huller and Oil Company, a foreign corporation. The levy was upon personalty, of a perishable nature, all of which was sold, under order of the judge of the superior court, on June 14, 1872, producing the net sum of $5,125.00. Conflicting claims on this fund were presented, and it was, by order of court, June 22, 1872, deposited with John King, banker. King became an involuntary bankrupt. Blandford & Garrard, attorneys, in behalf of Fontaine, a judgment creditor of the Huller and Oil Company, whose judgment has since been transferred to them, and in behalf of Mary S. Smith, a creditor by distress warrant, petitioned, May, 1874, for the appointment of a receiver to collect from the estate of King the amount so deposited, and to bring it before the court. Coleman was appointed such receiver. Blandford & Garrard represented him in the bankrupt court. There was awarded to him a sum which, after deducting his charges, leaves in his hands $1,869.00 for distribution.

In July, 1872, the Huller and Oil Company was adjudicated a bankrupt in the U. S. district court for the southern district of New York, and in the following September John Loudon was appointed assignee.

The following claims were presented as liens on said fund:

1. Blandford & Garrard, attorneys, for professional services rendered in having the receiver appointed, and for services rendered for the receiver in bringing the fund into court, $300.00.

2. The Columbus Iron Works Company, which alleges as follows: It is a machinist, and as such did, from November 4, 1871, to April 4, 1872, furnish, and put up, and repair, for said Huller and Oil Company, certain machinery, to-wit: One steam engine, fixtures, shafting, etc.; did repair the oil presses, etc. For these services said company became indebted to it on May 4, 1872, $1,870.26. It recorded its lien upon the machinery and premises within three months

from the time the work was completed. Within twelve months from the time said debt matured, an attachment was levied at its instance upon said machinery and fixtures ; the property was sold under order of the judge, and is represented by the fund now in court for distribution.

3. Distress warrant in favor of Mary S. Smith for rent, $550.00, which was levied upon a part of the property subsequently sold under order of the judge.

John Loudon, as assignee in bankruptcy, claimed the entire fund, and filed. objections to every assertion of lien thereon except the third above set forth. He was successful as against all except the above three. As to them, the following verdict was returned :

"We, the jury, find in favor of Blandford & Garrard $200.00, the amount claimed by them. We further find for the Columbus Iron Works, $1,119.01, and for Mary S. Smith, $550.00."

Whereupon the court adjudged that the receiver first pay all the costs, and then the parties mentioned in the verdict in the order named. This judgment was subsequently changed by requiring that the costs be paid by the parties in proportion to the amount recovered by each.

Loudon, assignee, moved in arrest of judgment upon the following grounds :

1. Because at the November term 1877, the Columbus Iron Works Company, certain judgment creditors, Blandford & Garrard, and Mary S. Smith, presented their claims of lien on this fund, to all of which movant objected except the last. Upon the trial of the issues thus formed, the whole fund was found subject to the lien of the Iron Works Company. To this ·finding all of the claimants submitted except movant and Mary S. Smith. They moved for a new trial, which being refused, they appealed to the supreme court. That tribunal held that the only necessary parties to said motion, the others not contesting the verdict, were the movants, the Iron Works Company, and the receiver. A new trial was ordered. (59 *Ga.*, 653.) Upon the new trial,

Blandford & Garrard again claimed for fees, when the verdict and judgment were rendered as above stated.

2. Because there is no such case shown by the records of this court as that of Blandford & Garrard, partners, etc., *vs.* Charles Coleman, receiver, Columbus Iron Works, Mary S. Smith, John Loudon, *et. al.* (This is the heading which precedes the judgment of the court.)

3. Because the finding of the jury in favor of the Iron Works, even if based on a machinist's lien for furnishing and repairing machinery to the amount of $1,119.01, does not authorize a judgment requiring the receiver to pay that amount out of the fund in his hands, until an execution shall first be ordered against the premises to which said machinery was attached.

4. Because the fund was not subject to the amount found by the jury unless the verdict had gone further and declared that the Iron Works Company had a lien on all the property which produced the fund, or else stated what portion of said fund was the proceeds of property upon which said company had a lien.

5. Because the mere finding of $1,119.01 in favor of the Iron Works Company, without more, did not authorize a judgment requiring the receiver to pay out of a fund in his hands; nor did it authorize the court to postpone one creditor to another.

6. Because as the verdict gives no preferences, neither can the judgment.

7. Because the record discloses that the Huller and Oil Company was adjudicated a bankrupt in July, 1872, the receiver was appointed in May, 1874, and the services of Blandford & Garrard were rendered without notice to the assignee, and two years after the adjudication.

8. Because the distress warrant in favor of Mary S. Smith was levied in part upon property upon which the Iron Works claimed no lien, and it is impossible to tell from the verdict what part of the property levied upon by the distress warrant was found to be subject to the lien of said

Iron Works, and yet the judgment gives it its whole debt out of the fund, although a portion thereof must be the proceeds of property on which Mary S. Smith had a specific lien, and on which it had no lien.

9. Because the fund arises from the sale of the whole property, and neither Mary S. Smith nor the Iron Works claimed any lien on a great and valuable part of the property, to the proceeds of which movant is entitled.

10. Because the whole fund arises from the sale of personal property which was perishable, and the lien of the machinist only extends to such machinery as he delivers, which is attached to the realty, and to the realty itself, of which the machinery becomes a part.

The motion in arrest was overruled, and movant excepted.

He then moved for a new trial upon the following grounds :

1. Because the court erred in ruling that the arguments should be made in the order in which the parties came into court and in which the evidence was introduced ; that is, that Blandford & Garrard should open, counsel for other creditors follow, then counsel for movant, then counsel for said creditors in reply to movant, then Blandford & Garrard in conclusion.

2. Because the court erred in entering the following judgment on the verdict. (Then follows the judgment as originally rendered, not as subsequently changed.)

3. Because the verdict does not specify whether the jury found a lien in favor of the Iron Works Co. for construction of an engine, for repairs, or for what repairs.

4. Because the court erred in charging as follows in reference to the claim of Blandford & Garrard : " Whenever counsel represent a party in a court, and perform service for him, such counsel would be entitled to compensation for such service, if such party accepted the service. Blandford & Garrard claim that they brought this money into the hands of the receiver, and therefore are entitled to pay. If they have brought themselves within these rules of law,

then they are entitled to such fee as they may have proven their services to have been worth." It is insisted that this charge was calculated to mislead the jury.

5. Because the court erred in postponing the lien of Mary S. Smith to the costs and the liens of Blandford & Garrard and the Columbus Iron Works.

6. Because there was no evidence to show what part of the fund in the hands of the receiver was the proceeds of the property on which a lien attached for the sum found in favor of the Iron Works.

7. Because the verdict was contrary to law and to evidence.

8. Because the court erred in failing to state in its charge any right which, under any circumstances, movant might have to the fund.

9. Because the court erred in its charge as a whole, and in various parts.

In reference to the last ground, it is only necessary to state that the court charged, in substance, the principles of law, so far as applicable, enunciated by this court when the case was here before—59 *Ga.,* 653.

The evidence on the claim of Blandford & Garrard showed that they had Coleman appointed receiver, proved his claim as receiver against the estate of King, bankrupt, and after some litigation, collected his *pro rata* of the fund in the bankrupt court; that their services were worth $200.00.

The question as to their claim, upon the evidence, arose from the fact that in rendering these professional services their motive was to get the fund into the hands of the receiver in order that they might collect from it a judgment against the Huller and Oil Company held by them    They induced the receiver to consent to act, promised compensation, etc.    But this judgment could not be enforced, and hence their professional services would have been lost unless they were entitled to their fee on account of having brought the money into court for distribution.

The claim of the Iron Works was based upon a draft for $850.00, and an open account for $1,020.26, commencing November 4th, 1871, and ending April 4th, 1872. The draft was given in part payment for a steam engine built by the Iron Works. The price was $1,350.00. The Huller and Oil Company gave two drafts for this amount, dated January 1st, 1872, the first for $850.00, due at four months, the second for $500.00, due at six months. The last draft was paid by turning over to the Iron Works a smaller engine. The first is still due and unpaid. The larger engine was "set up" the last of December, 1871, and was in position ready for use sometime between January 19th and February 1st following. "Setting up" an engine is putting it up on wood-work, and then building the brick-work, attaching the chimney, and making the proper connection of steam and water. It was stipulated that the engine was to be put in position ready for running, though the expense of this was to be paid for in addition to the $1,350.00 for the engine. The charges for this work were entered in the open account, making the engine in position, ready for work, with all necessary attachments, cost about $1,500.00. The remaining items of the account are for such articles as an iron works company would naturally furnish to a huller and oil company, and for repairs on the same. The claim of lien of the Iron Works was recorded on April 5th, 1872, and covered about one-fourth in value of the property sold by the sheriff on June 14th.

No question was made on the amount allowed to Mary S. King.

The motion was overruled, and movant excepted. Error is assigned upon the refusal to arrest the judgment, and the refusal to grant a new trial.

R. J. MOSES, for plaintiff in error.

PEABODY & BRANNON, for defendants.
Motion for new trial not maintainable after motion in

arrest, 2 Tidd's Prac., 913 ; 23 *Ga.*, 496. Order of argument, 56 *Ga.*, 152 ; Code, §3718.

BLECKLEY, Justice.

1. The state of the record considered, the grounds of the motion in arrest of judgment were not appropriate to such a motion. A motion in arrest can properly be based on nothing but what is apparent on the face of the record or pleadings. Code, §3587. As to the points made on the verdict, they are answered by the fact that the verdict, construed in the light of the pleadings, and considering the nature of the issues on trial, is not only intelligible, but sufficiently definite and certain. It would not be difficult to enter up, on the verdict, a judgment which would carry out the intention of the jury as to all the parties.

2. The motion in arrest of judgment was made and overruled at the term of the court at which the verdict was rendered. The motion for a new trial was then made during the same term. In Georgia practice it is allowable to follow an unsuccessful motion of the former class with a motion of the latter class. 59 *Ga.*, 105 ; 55 *Ib.*, 667 ; 23 *Ib.*, 493. The Code restricts motions for a new trial, except in extraordinary cases, to the term at which the trial was had, (Code, §3719) ; but no other restriction in point of time is imposed.

3. The order of argument in a case like the present is subject to the sound discretion of the presiding judge, all the claimants to the fund having introduced evidence.

4. The necessary expenses of a receivership will fairly include a reasonable compensation to counsel for bringing the fund into court, or securing it for the receiver. Such compensation is payable out of the fund.

5. If the verdict could be held correct, any error in entering judgment thereon would be matter for exception, but not for a motion for a new trial. Of course, if the whole vice were in the judgment, it could be purged out without trying the case over.

6. The failure of the verdict to mention any lien was not fatal to it. That the successful claimants each claimed as a lien creditor, and not otherwise, was apparent on the face of the record, and the character of each lien was set forth. The verdict is to be construed as finding, by necessary implication, a lien to the extent of the sum of money awarded to each claimant.

7. We have compared the charge of the court in respect to the lien set up by the Columbus Iron Works Company as a machinist, with the rulings of this court upon the former writ of error in this same case (59 *Ga.*, 653), and find no substantial difference between them. It seems to us that the charge conforms to our previous rulings, in general sense and substance, and closely enough for all practical purposes.

8. The effort of the other creditors to drive the machinist against the realty, and thus leave · the personalty entirely unaffected by the machinist's lien, cannot and ought not to succeed. This is a money rule, and there is a fund in court to be distributed. In so far as the lien of the machinist is the highest and best lien upon that fund, it ought to take without reference to what might be reached by other and further operations against property not yet sold, or even condemned. If creditors who have junior liens upon the fund wish to have the benefit of the machinist's lien as against this other property, let them advance the money necessary to control this lien, and then pursue the property at their own risk and expense. In this particular case, there is another feature of great moment, and that is, that the realty does not belong to the debtor, but to a lessor; and even if this lessor's property could be taken to pay the lessee's debt for machinery, under the special provisions of our lien laws, the holder of the lien, it would seem, ought not to be *compelled* to resort to it. There may be a mere legal liability of the lessor's property, but if so, there would be no inequity to the other creditors of the lessee not to enforce it. It will be seen that the question presented is

not as to pursuing the lessee's term in the leased premises, but the premises themselves.

9. The record of the machinist's lien was in time, as to the price of the engine and the cost of putting it up, etc., if the record of the lien was within three months after the work contracted for was completed. The contract for the work, it would seem, was not separate from the contract of sale, but a part of one and the same contract. This is the great fact. The sale was not an independent transaction, but was connected with a stipulation for work. To perform the contract fully, required the completion of the work, as well as the delivery of the engine. Arrangements about the price were immaterial on the question now before us. Many particulars in respect to price, mode of payment, time of payment, etc., may be embraced in one contract; for a contract may be carved into various specifications and subordinate parts.

10. In the argument here in behalf of the machinist, it was conceded that the open account, except for putting the engine in position, etc., could not be so connected with the purchase of the engine as to make the whole one contract. For this reason, the main body of the account was put out of the case. The unpaid portion of the price of the engine was the main sum for which a lien was insisted upon. Now this lien, as we gather from the record, attached upon about one fourth of the property sold, taking the proceeds of the sale as the basis of value. These proceeds of sale went into the hands of John King as the first receiver, and, by reason of his bankruptcy, about two-thirds of the amount was lost. In other words, the second receiver collected from the estate of King about one-third of the whole fund with which King was chargeable. The court and jury seem to have treated the lien of the machinist as attaching to pretty much the whole of this one-third. This we think was an error, and the only substantial error which we have discovered. The lien should be considered as attaching to the

same proportion of the part of the fund saved as it bound of the original fund—say, one-fourth. If money belonging to several persons be mixed, and some of it be lost, each has a right to his *pro rata* share of the amount saved. Benjamin on Sales, 553. The principle, we think, applies to lien as well as to title. It cannot be assumed that the part of the fund upon which the lien did not rest was the part out of which the whole loss happened. Upon another trial, it will be incumbent on the jury to ascertain exactly how much of the fund in the hands of King was produced by the property which was subject to the machinist's lien; and that proportion should be kept steadily in view in dividing the remnant of the fund with other claimants, including the assignee in bankruptcy.

Judgment reversed.