15595

BEDFORD *ET AL.* v. CITIZENS & SOUTHERN NATIONAL
BANK OF SOUTH CAROLINA *ET AL.*

(28 S. E. (2d), 405)

(See also: 197 S. C., 96, 14 S. E. (2d), 577; 200 S. C., 96, 20 S. E.
(2d), 623; 201 S. C., 447, 23 S. E. (2d), 362)

April, 1943.

*Mr. H. L. Erckmann,* of Charleston, S. C., appeared as
Counsel for Defendant Banks, Administrators, d. b. n., c.
t. a., of the Estate of Mary Jane Ross, deceased.

*Messrs. Barnwell & Whaley* and *Messrs. Mitchell &
Horlbeck,* all of Charleston, S. C., Counsel for Charleston
Library Society and Trustees of The Endowment Fund,

508

*Mr. Henry E. Davis,* of Florence, S. C., Counsel for Respondents,

Counsel For Charleston Library Society and Trustees of The Endowment Fund,

December 3, 1943.

Mr. Associate Justice Stukes delivered the unanimous Opinion of the Court:

The will óf the philanthropist, Miss Mary Jane Ross, late of Charleston, has become legendary in the annals of this Court. Unusual legal controversies concerning its beneficent provisions whereby her considerable fortune was distributed to the public objects of her patriotic bounty have been decided here before. It is not unfitting that these permanent records of public circulation have been made of the splendid gifts by Miss Ross to cherished institutions of her historic city, the like of which are regrettably rarè in this State. To most of these former adjudications brief references will have to be made in this decision.

In that reported in *Medical Soc. of South Carolina v. South Carolina Nat. Bank of Charleston,* 197 S. C., 96, 14 S. E. (2d), 577, called the museum case, the gift by Miss Ross of several hundred thousand dollars in real and personal property to establish and maintain in perpetuity a family memorial museum was found invalid, at which time it was thought that this portion of the estate would go to the Medical Society of South Carolina (Roper Hospital of Charleston) and the Presbyterian Hospital of Philadelphia, as residuary devisees and legatees under the will, and the judgment so provided. But it was suggested by counsel for appellants in that proceeding, after rendition of the circuit decree and on their appeal to this Court, by their exception XIX, that under the doctrine of dependent, relative revocation the hospitals were not the true beneficiaries, but the Charleston Library and its endowment fund, the present appellants, were. The latter will be henceforth herein referred to as the library. The important point suggested was expressly not then decided by this Court for it had not been

raised in the trial and, incidentally, the library was not a party to that action. All of this will more fully appear by reference to the report of the decision, cited above.

Promptly thereafter suit was brought by the library against the administrators of the estate and the hospitals wherein it prevailed under the doctrine of testamentary construction mentioned, dependent, relative (or conditional) revocation; and the library was substituted as the beneficiary of this magnificent gift. The unique nature of the case, its large proportions, and the zeal of counsel engaged caused the Court to hear and consider arguments twice upon the identical question—an exceptional procedure. See the decisions reported in *Charleston Library Society v. Citizens & Southern Nat. Bank,* 200 S. C., 96, 20 S. E. (2d), 623, and *Id.,* 201 S. C., 447, 23 S. E. (2d), 362.

The surprising course of legal events just mentioned gave rise to the present litigation. The able and industrious surviving counsel who represented the hospitals in these suits and the personal representatives of two of them, deceased, are the plaintiffs in the present action. Their contract for compensation with their hospital clients provided that they be paid reasonable fees from the funds recovered, patently a contingent fee, contingent upon a successful conclusion of the litigation. *South Carolina Public Service Authority v. Weeks,* 201 S. C., 199, 22 S. E. (2d), 249. Therefore, they received no compensation (from the fund finally accruing to the library) for their extraordinarily lengthy, expert and laborious professional services in (a) the prosecution for the plaintiffs in that action, their clients, to a then apparently successful termination, of the suit by the hospitals (the museum case), 197 S. C., 96, 14 S. E. (2d), 577, and in (b) the unsuccessful defense of the library's action, in which latter there were two appeals to this Court, as has been noted, 200 S. C., 96, 20 S. E. (2d), 623, and 201 S. C., 447, 23 S. E. (2d), 362.

In these unenviable circumstances they served their complaint in this action upon the library and the administrators in which they alleged in much greater detail the facts and proceedings aforementioned, that the library is the direct beneficiary of the fund "created" by the efforts of the plaintiffs and that they are entitled as compensation for their professional services to a sum equal to twenty-five percent of the amount of the fund. The administrators, two leading banks with experienced trust departments, answered in effect that they had never employed plaintiffs or received any benefit from their services and that they had refused their demand for compensation for they had their own counsel. The library demurred and answered, but it is thought unnecessary to summarize even the contents of these pleadings. Suffice it to say that they raise the issues which are considered controlling of the appeal and which are discussed hereinafter. The demurrer was informally overruled and the testimony taken by the Court without a jury and without a reference, whereupon, after consideration, a very long decree was filed in which it was held that plaintiffs should be paid a reasonable fee from the fund for their services, which twenty-five percent thereof was found to be, and judgment was ordered to be entered accordingly. The administrators and the library have appealed upon numerous exceptions which make the controlling issues which will be discussed. Separate treatment of them is not deemed necessary. The same is true of the "sustaining grounds" submitted by respondents.

The case presented, in legal implications, is about as follows: A successfully sued B for recovery of the fund; C then sued A for recovery of the same fund and also succeeded; A's attorneys, successful in their original suit but failing in their efforts to retain the fund for their clients against C's claim (the latter represented by other attorneys), now seek to collect a fee from the fund over the opposition of C who has his own attorneys to pay. The stating of the question by

this simple analogy seems to us to undoubtedly answer it against the contention of these attorneys (the respondents) and in favor of the position of the appellants. Similarly, this result is required by application of the principles defined in the precedents which will be briefly discussed. Many cases from other state and federal Courts were cited in the decree, but none of them parallels in facts the case at bar, so little help has been derived from consideration of them, which however, has been painstakingly had.

The subject is not an obscure one in this jurisdiction. It was lucidly explored in the case of *Petition of Crum* in 1941, 196 S. C., 528, 14 S. E. (2d), 21. The full discussion in the opinion and the citation of numerous applicable authorities make a repetition of them now unnecessary. In that controversy Mr. Crum was held entitled to the allowance of a fee for professional services out of the whole of three devises in which contest for their recovery he had actively and successfully represented the beneficiaries of one while those of the others, though parties, went unrepresented, sat back and shared the benefits. The facts of the case were quite different from this. Vital distinctions are disclosed by even a casual comparison. Were this similar, the hospitals and the library (the latter without counsel) would have to have shared the fund resulting from the invalidating of the museum, it must have been a common fund, which as we have seen is plainly not the case. Speculating further upon *Crum's case* as to what the facts must have been in it to make it like the one in hand, the devisees unwilling to pay fees there must have (as the result of their counsel's efforts) been awarded the whole of the fund or devise after its temporary recovery at first by Mr. Crum's clients, with him following it for his fee, which was certainly not the case there presented or the decision would doubtless have been different. Thus indicated are essential differences which come to mind upon considering and contrasting the cases.

The rules governing the allowance of counsel fees by Courts of equity for recovery or preservation of a common fund were fully set forth in *Crum's case* and will not be restated. It is noted that through the authorities runs the conception of a common fund, agency of the movant (express or implied), and the sharing of benefits in which those who participated must pay, elements entirely lacking in the instant case. A decision there cited and relied upon extensively by respondents here is *Sprague v. Ticonic National Bank,* 307 U. S., 161, 59 S. Ct., 777, 780, 83 L. Ed., 1184.

In it the beneficiary of a trust being administered by a failed bank sued for the separation from the general assets of certain securities, the property of the trust department of the bank, really the *res* of the litigant's trust and of the trusts of other *cestuis* who were said to be liable for a *pro rata* of the litigant's expenses, including counsel fees. In the course of the opinion it was admitted that the securities (bonds) did not constitute a common fund to be shared by the *cestuis,* in the usual sense, but it was said: "But in view of the consequences of *stare decisis,* the petitioner by establishing her claim necessarily established the claims of fourteen other trusts pertaining to the same bonds." It was further said that the petitioner had vindicated the claim of "beneficiaries similarly situated but not actually before the court." In conclusion of its consideration of the point, this statement was made by the Court: "In any event such allowances (counsel fees) are appropriate only in exceptional cases and for dominating reasons of justice." This is sufficient of this case to show that it is not authority for the allowance of fees in the unusual case before us. It cannot be fairly said that justice to respondents requires the injustice of compelling appellants to pay from their fund two counsel fees, especially when they run as high as in this case.

"Dominating reasons of justice" do not indicate the subjection of the fund in question to the payment of two substantial fees and the devotion of it to the public charitable use

intended by the owner, the testatrix, only after it has been so depleted. And there is no question of the right and propriety of the library's own counsel receiving compensation for their successful suit to recover the fund for their client; in fact they had a written contingent fee contract for such and are, as said, of course, entitled to be paid for their fruitful efforts.

Well worth repeating are the words of the eminent Justice McIver (afterward Chief Justice) in the opinion of the Court in *Hubbard v. Camperdown Mills,* 25 S. C., 496, 1 S. E., 5, 9, a case in which it was likewise necessary to deny allowance of attorney's fees: " * * * having thus been compelled to employ other counsel, whose fees they will, of course, have to pay, it would seem to be a hard measure of justice if they were also required to contribute to the payment of the counsel of their adversaries."

The A. L. R., annotations in which many pertinent cases from Federal and State Courts are reviewed, were cited by this Court in the *Crum case, supra.* They have been read and considered again and we find no authority in them for much, if any, comfort to respondents in their contention. The editor summarizes the views of Courts generally in decisions which were upon facts at all similar to this, in the following observation found on page 1160 of 49 A. L. R.: "The rule is that there can be no allowance if the interests of the party claiming an allowance of counsel fees from a fund brought into Court are antagonistic to those entitled to it, even though the services may have benefited them."

The case is not entirely unlike that of *Ex parte Lynch,* 25 S. C., 193, in which again is found that master of the law, Justice McIver, as author of the opinion. There counsel for a mortgagee successfully defended an ejectment suit against the mortgagor, who, by advice of counsel, had deserted the litigation as hopeless, but counsel were denied a fee for their fine services from the surplus value of the property above the mortgage debt, the Court quoting from its

earlier case of *Hand v. Savannah & C. R. Co.,* 21 S. C., 162, as follows: "No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another, by whom he may have been employed. Before a legal charge can be sustained, there must be a contract of employment, either expressly made or superintended (superimposed?) by the law upon the facts." That case was really stronger for allowance of fees than is this. Equitable superimposition is illustrated by *Crum's case, supra,* but would not, we think, serve the ends of justice here.

Consideration of the circuit decree is convincing that the Court was influenced by its view of the effect of failure on the part of the library to sooner act, particularly because of the connection of some of its trustees with the museum case in their capacities as attorneys, but all of this was thoroughly gone over in the second appeal of *Charleston Library Society et al. v. Citizens & Southern National Bank of South Carolina et al.,* 201 S. C., 447, 23 S. E. (2d), 362, and should not have influenced the trial Court in this case. The order of trial Judge Grimball in the appeal just referred to was affirmed and, in fact, adopted as the judgment of this Court on the points involved, none of which, therefore, was available to respondents in this action and the learned Judge who tried it fell into error when he considered them at all. They were fully and plainly settled in the former litigation.

Were the hospitals plaintiffs in this action and seeking reimbursement for counsel fees paid by them for recovery of the fund which finally went to the benefit of the library, possibly a different problem would be presented, as to which we express no opinion. This consideration is apt to be confusing unless the influence of it be carefully avoided in weighing and balancing the equities. The fact is, as has already been pointed out, the hospitals employed their counsel, the present respondents, on a contingent fee basis and the

contingency not having happened, there was no fee, or liability therefor, accruing under the contract which respondents voluntarily entered into. *South Carolina Public Service Authority v. Weeks, supra.* It is not at all unusual for attorneys employed on contingencies to be disappointed in the collection of fees. Incidentally, respondents have been refunded their disbursements in the museum suit, about which there seems to have been no contest and certainly no appeal. See 201 S. C., at page 471, 23 S. E. (2d), at page 372.

Respondents insist in argument upon the tenuous theory of an implied contract binding the library appellants to pay them counsel fees, arising at the time of the rendition of the circuit decree in the museum case and before the hospitals and the library became adversaries. But such cannot reasonably be presumed for the museum decree directed the distribution of the fund to the hospitals, respondents' clients, and respondents already had an express contract for compensation from their clients, the hospitals. The library then was a stranger to the litigation and only entered such as an antagonist of the hospitals, which latter continued to be represented by respondents, and controversy raged between them to the end.

Appropriate again are words of Mr. Justice McIver in *Hubbard v. Camperdown Mills, supra,* from which we quote another excerpt: "We do not for a moment, doubt that this claim has been urged in the best of faith, and under a full conviction of its rightfulness; and there is little doubt that (the attorneys) rendered valuable services in the case for which they should be amply compensated, and it would give us pleasure to be able to award it to them, but we have no power to subject the fund in the hands of the receiver to such payment unless we could find some legal ground upon which to base the charge, and this we have been unable to do."

For the reasons stated, the judgment appealed from is reversed and the case remanded for entry thereof in favor of appellants.

Reversed.

MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE, and CIRCUIT JUDGES G. DUNCAN BELLINGER and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.