17721

Ex parte Ogden A. RANKIN, Petitioner–Respondent, v. SUPERIOR AUTOMOBILE INSURANCE CO. OF FLORENCE, S. C., Respondent-Appellant. In re David L. STALVEY, Plaintiff, v. Ruby BUTLER, Defendant.

(117 S. E. (2d) 525)

*Messrs. Willcox, Hardee, Houck & Palmer* and *James C. McLeod, Jr.,* of Florence, *for Appellant,*

*Ogden A. Rankin, Esq.,* of Conway, *for Respondent.*

December 7, 1960.

OXNER, Justice.

This proceeding was commenced by respondent, Ogden A. Rankin, a member of the Conway Bar, to require appellant, Superior Automobile Insurance Company of Florence, South Carolina, to pay him for certain professional services rendered in the case of *David L. Stalvey v. Ruby Butler.* The facts out of which this claim arises are as follows:

On May 12, 1959, near Conway, South Carolina, a collision occurred between the automobiles of David L. Stalvey and Mrs. Ruby Butler. Stalvey employed respondent to represent him on a contingent basis. On May 15th respondent brought suit in behalf of Stalvey against Mrs. Butler for personal injuries sustained by Stalvey and for the damage to his automobile resulting from said collision. On July 2, 1959, appellant, which had insured Stalvey's automobile against loss or damage from collision, paid him the sum of $1,098.40, representing the damage to his automobile less the sum of $50.00 set out in the deductible clause. Thereupon Stalvey executed a subrogation agreement in which he "pledged" to appellant all claims for property damages arising out of said collision. Stalvey further stated in this agreement: "I further pledge that I have received no settlement from, nor signed any release for the responsible party, and declare that I will take no such action without the knowledge and consent of the 'company'." On July 8th appellant notified the National Grange Mutual Insurance Company which

carried liability insurance on Mrs. Butler's car of its subrogation claim. On July 15, 1959, the National Grange Mutual Insurance Company acknowledged receipt of appellant's letter of July 8th and further stated: "As you know, your insured and a passenger in your insured vehicle received injuries and are making claim for bodily injury. As soon as these outstanding bodily injury claims are resolved, we will be glad to discuss the matter of your subrogation claim."

On January 20, 1960, the action brought by Stalvey against Mrs. Butler was settled for the sum of $1,600.00. Appellant was not consulted and had no part in the settlement. At the request of respondent, two drafts were issued by the National Grange Mutual Insurance Company, one payable to the joint order of Stalvey, appellant and respondent for $1,098.40 and the other for $501.60, payable to the order of Stalvey and respondent. On the same day respondent wrote appellant a letter outlining the settlement made and claiming that he was entitled to a fee of $366.13, representing one-third of the appellant's subrogation claim. In this letter he enclosed his personal check to appellant for $732.27, along with the draft of $1,098.40 which he asked appellant to endorse and return to him. On January 22nd, appellant wrote respondent denying any liability to him for attorney's fees and returned both the draft and the check.

On January 26, 1960, respondent filed a petition in the Civil Court of Horry County in which he asked that appellant be required to show cause why it should not pay him a reasonable attorney's fee for collecting the sum of $1,098.40. A rule was issued and a return duly filed by appellant in which it denied ever employing respondent and further stated "that it was looking solely to the National Grange Mutual Insurance Company to make direct settlement with it for its interests." A hearing was had on February 23rd. The testimony disclosed the facts hereinabove related. It further developed from the testimony that Mr. A. L. Hardee, a member of the Florence Bar, was general counsel for appellant on a salary basis with the duty of advising it on all

legal matters including those relating to subrogation agreements, and that some subrogation claims were handled by appellant directly with the interested parties while others were turned over to attorneys for collection under a standard form of collection agreement used by appellant. The only dispute in the testimony related to the extent of the interest which respondent was employed to represent. He says the understanding was that he was to bring suit to recover the entire loss, including all damages to Stalvey's automobile, on a contingent basis of one-third of the recovery. Stalvey denied that respondent was authorized to make any collection in behalf of appellant, stating that he was employed solely to handle his personal injury claim, together with the item of $50.00 deducted in the collision settlement. The adjuster for appellant said that he thoroughly explained to Stalvey that appellant "would handle the subrogation in its own way."

On June 17th, the Judge of the Civil Court of Horry County issued an order in which he found that respondent was entitled to recover from appellant reasonable attorney's fees for collecting the sum of $1,098.40, which he fixed at $366.13, one-third of the amount collected. The case is here on appeal from this order.

The general rule is well settled that a claim of an attorney for professional services, must, like a claim for any other service, rest upon contract between the parties, either express or implied. *Nimmons v. Stewart,* 13 S. C. 445; *Hand v. Savannah & Charleston Railroad Company,* 21 S. C. 162; *Westmoreland v. Martin,* 24 S. C. 238; *Ex parte Lynch,* 25 S. C. 193; *Hubbard v. Camperdown Mills,* 25 S. C. 496, 1 S. E. 5; *Wilson v. Kelly,* 30 S. C. 483, 9 S. E. 523; *Bedford v. Citizens & Southern National Bank,* 203 S. C. 507, 28 S. E. (2d) 405. Under this rule attorneys must ordinarily look to their clients for compensation. "The simple fact that such services have enured to the benefit of others, with whom there is no contract relation, either directly or through some agent or representative, affords no

legal foundation for a charge against such other persons." *Hubbard v. Camperdown Mills,* [25 S. C. 496, 1 S. E. 9] *supra.* There are certain exceptions to this general rule, some of which are lucidly discussed in the case of *Petition of Crum,* 196 S. C. 528, 14 S. E. (2d) 21, but none of them apply to the facts in the instant case.

■ It seems quite clear that there was no express contract of employment and we do not think there are any circumstances giving rise to an implied contract between respondent and appellant. If we assume, as respondent contends, that under his contract with Stalvey he was to receive one-third of the entire recovery, including damage to the automobile, such contract would not be binding on appellant which was not a party to it. It may be true, as argued by respondent, that appellant could have intervened in the action, *Calvert Fire Insurance Co. v. James,* 236 S. C. 431, 114 S. E. (2d) 832, but its decision not to do so did not have the effect of authorizing respondent to represent its interests. The most that can be said is that the services rendered by respondent incidentally benefitted appellant, but as pointed out in the foregoing cases, such incidental benefits constitute no foundation for a legal claim.

A case somewhat apposite is *Ex parte Lynch, supra,* 25 S. C. 193. This was a suit in ejectment. The defendant, upon being advised by his counsel that his title was worthless and could not be sustained, sought to make a compromise settlement with plaintiff. About this time one who held a mortgage given by the defendant on the land was allowed to intervene and successfully defended the ejectment suit. Counsel for the mortgagee then claimed that they were entitled to attorneys' fees from the mortgagor out of the surplus value of the mortgaged land. The claim was denied. In the course of the opinion, the Court quoted the following from *Hand v. Savannah & Charleston Railroad Co., supra,* 21 S. C. 162: "No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages to one, flowing

to him on account of services rendered to another, by whom he may have been employed. Before legal charge can be sustained, there must be a contract of employment either expressly made or superinduced by the law upon the facts."

The order of the Court below is reversed and respondent's petition is dismissed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.