## 23624

CHARLESTON JOINT VENTURE, Respondent v.
Richard E. McPHERSON and Hazel McPherson, Appellants.

(417 S.E. (2d) 544)

Supreme Court

*Margaret D. Fabri*, and *Harriet McBryde Johnson*, Charleston, *for appellants*.

*Cheryl D. Shoun* and *Robert L. Wylie, IV*, Charleston, *for respondent*.

Heard Oct. 21, 1991.

Decided April 6, 1992.

CHANDLER, Justice:

Richard and Hazel McPherson (The McPhersons) appeal an Order permanently enjoining them from entering upon the premises of Citadel Mall, in Charleston, and from "undertaking such activity to express and/or advance their theories, and/or ideas, and from any and all similar or related activity." The Order does not prohibit the McPhersons from entering Citadel Mall for purposes of shopping.

We affirm.

## FACTS

Charleston Joint Venture (CJV) is part owner of Citadel Mall (Mall); other Mall owners include Belks, Sears, and Thalhimers.

In late 1988, the McPhersons began parking their van in a highly visible area of the Mall parking lot, on that portion owned by CJV. On each side of the van were signs, approximately five feet high by five feet wide, naming a certain private individual[1] as a child molester and reading:

INDICTED ON 14 COUNTS. FOUND GUILTY[2] IN FAMILY COURT, BUT GOES FREE. POLICE DO THEIR JOB, THE COURTS DO NOT. CHILDREN ARE NOT PROTECTED BY OUR LAWS OR OUR COURTS.

The van also displayed a sign indicating that, upon request, the McPhersons would furnish additional information.

The McPhersons parked their van at the Mall once or twice a week, for an average of four to six hours per day. They did not park at the Mall to shop but, rather, remained with the van at all times to distribute literature and to arouse public awareness of child molestation.

At three entrances to the Mall, signs were posted, reading:

NOTICE TO THE PUBLIC

THE PROPERTY COMPRISING CITADEL MALL IS PRIVATE PROPERTY. SOLICITING AND DISTRIBUTION OF HAND BILLS IS ABSOLUTELY PROHIBITED ON THIS PROPERTY.

WRITTEN PERMISSION MUST BE OBTAINED FROM THE MANAGEMENT OFFICE TO USE THIS PROPERTY FOR ANY ACTIVITIES OTHER THAN SHOPPING.

After the McPhersons had been parking the van at the Mall for several months, they were asked by the management of CJV to leave. When the McPhersons refused, CJV requested that City of Charleston Police arrest them for trespass. The McPhersons left upon request of police, but no criminal action was taken against them. They were repeatedly warned by Mall security officers to leave. Although they were threatened

---

[1] The name of the individual is omitted in both the order of the trial court and this opinion.

[2] The indictments against the named individual were, in fact, dismissed by the Solicitor.

with arrest on one occasion, at no time was an arrest made.

When the McPhersons persisted in their activities, CJV instituted this suit, seeking a permanent injunction on grounds of trespass, nuisance and invasion of privacy. CJV obtained powers of attorney from Belks, Sears, and Thalhimers to maintain suit on their behalf.

The McPhersons counterclaimed, alleging violations of their civil rights under 42 U.S.C. § 1983, as well as violation of their federal and state constitutional guarantees of free speech. They also moved to dismiss CJV's action for (1) failure to join all owners of Mall property, (2) lack of jurisdiction over the trespass action, and (3) failure to state claims for which relief could be granted in the nuisance and invasion of privacy claims. The motions were denied.

After a trial, Judge Anderson issued his Order granting CJV relief on all causes of action, denying the McPhersons' counterclaims, and permanently enjoining the McPhersons from entering upon Citadel Mall "and undertaking such activity to express and/or advance their opinions, theories and/or ideas, and from any and all similar or related activity."

## ISSUES

Although numerous issues are raised, we need address only:

(1) whether the injunction violates the McPhersons' state and federal constitutional rights of free speech;

(2) whether CJV acted under color of state law to violate the McPhersons' civil rights, under 42 U.S.C. § 1983;

(3) whether CJV properly alleged civil trespass;

(4) whether CJV had standing to maintain suit on behalf of other Mall owners, and

(5) whether an injunction was the appropriate remedy.

## DISCUSSION

### I. FREE SPEECH

The McPhersons contend (1) that the Mall was opened as a public forum, thus affording their speech constitutional protection,[3] and (2) that the Mall's policy of excluding protestors was applied to them in a discriminatory fashion. We disagree.

---

[3] U.S. Const. Amend. I, S.C. Const. Art, I, § 2.

Several decisions of the United States Supreme Court, commencing in 1946, address this issue.

In *Marsh v. Alabama*, 326 U.S. 501, 66 S. Ct. 276, 90 L. Ed. 265 (1946), the Court held that a "company town," wholly owned by Gulf Shipbuilding Corporation, could not prohibit a Jehovah's witness from distributing literature on a sidewalk near the Post Office. The decision reasoned that the company town was the "functional equivalent"[4] of a municipality, so that First Amendment freedoms could not be denied when exercised in the customary manner on its sidewalks and streets.

*Marsh* was extended in *Amalgamated Food Employees Union v. Logan Valley Plaza*, 391 U.S. 308, 88 S. Ct. 1601, 20 L. Ed. (2d) 603 (1968). There, union employees, to protest non-union employment, picketed a supermarket located in Logan Valley Plaza. In a 5-4 decision, the Court found the picketing protected by the First Amendment, holding that (1) the shopping center in question was the functional equivalent of the business district in *Marsh*, and (2) the picketing was directed specifically at an establishment within the center, and was concerned solely with the manner of that particular establishment's operation. However, the *Logan* Court expressly noted that it was "not called upon" to decide whether its holding extended to "picketing which was not . . . directly related in its purpose to the use to which the shopping center was being put." 391 U.S. at 320, n. 9, 88 S. Ct. at 1609, 20 L. Ed. (2d) at 613.[5] In the subsequent case of *Lloyd Corporation v. Tanner*, 407 U.S. 551, 92 S. Ct. 2219, 33 L. Ed. (2d) 131 (1972), the Court was, indeed, called upon to resolve that issue.

In *Lloyd*, Vietnam War protestors were enjoined from handbilling inside a mall in Portland, Oregon. The Court upheld the injunction, noting that *Logan* was limited to picketing directly related to the use to which the shopping center was being put, and that, there, the store's location would deprive picketers of any other reasonable opportunity "to con-

---

[4] As noted by the Court in *Lloyd Corporation v. Tanner*, 407 U.S. 551, 561, 92 S. Ct. 2219, 2225, 33 L. Ed. (2d) 131, 138 (1972), this term has its genesis in *Marsh*, although the precise phrasing originated in *Logan Valley, infra.*

[5] 391 U.S. at 320, 88 S. Ct. at 1609, 20 L. Ed. (2d) at 613, n. 9. *Logan* was effectively overruled in *Hudgens v. NLRB*, 424 U.S. 507, 96 S. Ct. 1029, 47 L. Ed. (2d) 196 (1976). The *Hudgens* Court noted that its holding in *Lloyd, supra,* amounted to a total rejection of *Logan*.

vey their message to their intended audience." 407 U.S. at 563, 92 S. Ct. at 2226, 33 L. Ed. (2d) at 140.

Clearly, as in *Lloyd*, the McPhersons' activity here is in no way directed at or related to the Citadel Mall, nor does the injunction deprive them of other reasonable opportunities to advance their cause.[6]

The McPhersons assert, nonetheless, that Citadel Mall ■ has opened itself as a public forum, thereby constitutionally protecting their speech. As did the Court in *Lloyd*, we reject this contention.

In *Lloyd*, the center was open generally to the public, and groups were permitted, by invitation and advance planning, to use its auditorium. Charitable organizations such as the Cancer Society, American Legion and the Salvation Army utilized the center from time to time. However, the invitation was not open-ended; political use was forbidden, except for speeches by presidential candidates which attracted great numbers of people to the center.

In rejecting the respondent's "public forum" contention, the *Lloyd* Court stated:

> Respondents' argument, even if otherwise meritorious, misapprehends the scope of the invitation extended to the public. The invitation is to come to the Center to do business with the tenants. It is true that facilities at the Center are used for certain meetings and for various promotional activities. The obvious purpose, recognized widely as legitimate and responsible business activity, is to bring potential shoppers to the Center, to create a favorable impression, and to generate goodwill. There is no open-ended invitation to the public to use the Center for any and all purposes, however incompatible with the interests of both the stores and the shoppers whom they serve.

407 U.S. at 564-65, 92 S. Ct. at 2227, 33 L. Ed. (2d) at 140.

Here, as in *Lloyd*, Citadel Mall policy prohibited political activity, handbilling and any type of solicitation. The Mall did

---

[6] In fact, the McPhersons had been picketing on the public streets in downtown Charleston. Mr. McPherson testified, however, that "it was more convenient for us to sit in the van instead of getting out in the hot sun and walking on my bad foot." (Tr. p. 439).

allow certain civic and charitable activities, such as diabetes screening, bloodmobiles, fingerprinting demonstrations and, for a fee, promotional activities such as boat and antique shows. The Mall manager testified these groups were allowed "from a commercial standpoint," to attract people to the Mall. Moreover, the Mall had signs posted at three entryways which prohibited, without prior written approval, any activities other than shopping.

We hold that the Mall did not so open itself to public use that the McPhersons' First Amendment rights[7] were violated by the injunction prohibiting their activity on privately owned property.[8]

Finally, the *Lloyd* Court noted that "the First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on *state* action, not on action by the owner of private property used *nondiscriminatorily* for private purposes only." 407 U.S. at 567, 92 S. Ct. at 2228, 33 L. Ed. (2d) at 142. (Emphasis in original and supplied.)

The McPhersons allege that, since it allowed cars with bumper stickers and various advertising logos to park in its lot, the Mall acted in a discriminatory fashion in excluding them. We disagree.

As noted previously, signs were posted at three Mall entrances prohibiting, absent written approval, any activities other than shopping. Additionally, current and prior Mall managers testified that it was Mall policy to exclude any type of overtly political or religious activity, and all forms of solicitation and handbilling. Although the McPhersons presented evidence of automobiles with bumper stickers and advertising logos parked in the lot, there was no evidence that these cars

---

[7] We likewise reject the contention that the McPhersons are entitled to greater free speech rights under Article I, § 2 of the South Carolina Constitution than under the First Amendment of the United States Constitution. *See, Prune Yard Shopping Center v. Robins,* 447 U.S. 74, 100 S. Ct. 2035, 64 L. Ed. (2d) 741 (1980). Our constitution affords the same protections as does the Federal constitution. *See* 1976-77 Op. Atty. Gen. No. 77-29, p. 34.

[8] We do not view the fact that the McPhersons' protest took place outside the Mall, and on its parking lot, as a critical distinction. The *Lloyd* Court specifically noted that "the essentially private character of a store *and its privately owned abutting property* does not change by virtue of being large or clustered with other stores in a modern shopping center." 407 U.S. at 569, 92 S. Ct. at 2229, 33 L. Ed. (2d) at 143. (Emphasis supplied).

were parked at the Mall for purposes other than shopping. Moreover, the Mall manager testified that, if a vehicle were left in the parking lot with a "For Sale" sign, the owners were requested to remove it. In short, no evidence was presented to demonstrate that any other vehicles, unconnected with shopping, were allowed to park in the Mall.

The McPhersons concede that their purpose in parking at the Mall was to focus public attention on child molestation. Once or twice a week, they parked the van in a highly visible corner of the Mall for periods of up to six hours. Mr. McPherson testified that, while he or Mrs. McPherson would occasionally enter the Mall, one or the other at all times remained with the van to distribute literature.

From a searching review of the record, it is manifestly patent that the McPhersons' miniscule shopping at the Mall was incidental to their primary and overriding purpose of arousing public awareness of child molestation.

Accordingly, we hold that the Mall, in requesting the McPhersons to leave, did not act in a discriminatory fashion.

## II. COLOR OF STATE LAW

The McPhersons next allege that Mall security officers and the Charleston police acted "under color of state law" to deprive them of their civil rights, thus entitling them to maintain an action under § 42 U.S.C. § 1983. We disagree.

Section 42 U.S.C. § 1983 imposes liability upon any person who, under color of state law, subjects any citizen to the deprivation of any rights, privileges or immunities secured by the constitution.

As noted previously, the Citadel Mall is private property, not a public forum, and therefore the McPhersons' free speech rights were not violated. They suffered no deprivation of rights embraced within 42 U.S.C. § 1983.

Moreover, the police and security officers, having taken no action pursuant to their statutory authority, did not act under color of state law. *See Chiles v. Crooks,* 708 F. Supp. 127 (D.S.C. 1989). As has been held:

Enforcement of trespass laws by the government should not have the effect of transforming private interference

with free speech activities into state interference. To so hold precludes the private property owner from enforcing his right to exclude others and converts his property into a public forum, open to the free use of any person exercising a First Amendment rights.

*City of Sunnyside v. Lopez*, 50 Wash. App. 786, 751 P. (2d) 313, 319 (Wash. App. 1988).

The § 1983 action was properly dismissed.

### III. CIVIL TRESPASS

The McPhersons contend CJF erroneously alleged *criminal* trespass in its complaint, thereby depriving the trial court of jurisdiction in this *civil* action. The contention is without merit.

Paragraph ten of CJV's complaint alleges the McPhersons' presence "interferes with Plaintiff's quiet enjoyment, peaceful possession and control of its property, and is otherwise a hindrance to Plaintiff."

One in peaceable possession may maintain an action for trespass against another who interferes with his quiet and exclusive enjoyment of the property. *Lane v. Mims*, 221 S.C. 236, 70 S.E. (2d) 244 (1952). "The plaintiff need only show a prior peaceable possession as against the defendant, in order to sue for trespass." *Stratos v. King*, 282 S.C. 501, 505, 319 S.E. (2d) 356 (Ct. App. 1984) (citing *Beaufort Land v. New River Lumber*, 86 S.C. 358, 68 S.E. 637 (1910)).

We hold that CJV's complaint properly alleged civil trespass.

### IV. JOINDER OF PARTIES

The McPhersons next assert that Belks, Sears and Thalhimers were necessary and indispensable parties, and CJV was without standing to sue on their behalf. We disagree.

We have previously held that where a property regime has the duty to maintain premises, it has standing to bring an action for construction defects, despite its nonownership of common elements of a condominium project. *See Queens Grant Villas Horizontal Property Regimes v. Daniel International Corp.*, 286 S.C. 555, 335 S.E. (2d) 365 (1985).

Here, CJV is part-owner of the Mall and adjoining parking lot, and is responsible for the overall maintenance of the Mall.[9] Further, unlike the property regime in *Queen's Grant*, CJF has an ownership interest in the Mall. We hold CJV had standing to sue on behalf of Belks, Thalhimers and Sears.

### V. INJUNCTIVE RELIEF
Finally, the McPhersons allege that injunctive relief was improper as CJV has adequate remedies at law. This Court has previously stated:

> While it is undoubtedly the correct rule that a court of equity will not interfere by injunction in cases of nuisances, trespasses, and like injuries to property when the parties can have complete redress in a court of law, still if it appears that irreparable mischief will be done by withholding the process, or where the damages that will result to the complainants are incapable of being adequately measured, or where the mischief is such, from it continuous and permanent character, that it must occasion constantly recurring grievances, which cannot be otherwise prevented, a court of equity ought to interfere by injunction to stay the wrong and protect the complainants' property and personal rights from hurt or destruction.

*Carter v. Lake City Baseball Club, Inc.*, 218 S.C. 255, 271- 272, 62 S.E. (2d) 470, 477 (1950) (citation omitted).

Under the facts and circumstances here, injunctive relief was proper.

The judgment below is affirmed.

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.

---

[9] Although the McPhersons contest this fact, the statement of the case indicates that Mall security guards were paid by CJV, clearly indicating its responsibility. The statement of the case is binding upon the parties. *United Fabrics Corp. v. Delaney*, 241 S.C. 268, 128 S.E. (2d) 111 (1962).