2009

PEPPERTREE RESORTS, LTD., Plaintiff v. CABANA LIMITED PARTNERSHIP, Maritime Development Corporation, William J. Reiner, Timothy Hayes, Rhonda L. Kelley, George Hunter McMaster, Greyhound Real Estate Finance Company, South Carolina Tax Commission and United States of America, Defendants, and PEPPERTREE RESORTS, LTD., Plaintiff v. CABANA LIMITED PARTNERSHIP, Maritime Development Corporation, William J. Reiner, Timothy Hayes, Rhonda L. Kelley, George Hunter McMaster, Greyhound Real Estate Finance Company, South Carolina Tax Commission and United States of America, Defendants, of whom Cabana Limited partnership is Appellant, and Peppertree Resorts, Ltd., Greyhound Real Estate Finance Company, the South Carolina Tax Commission, and the United States of America are Respondents.

(431 S.E. (2d) 598)

Court of Appeals

*M. Baron Stanton* and *George Hunter McMaster*, Columbia, *for appellant.*

*Preston B. Haines, III* of Myrtle Beach; *W. Cliff Moore, III, Asst. Atty. Gen. Arlene D. Hand,* and *Margaret B. Seymour,* Columbia, *for respondents.*

Heard Mar. 16, 1993.

Decided May 10, 1993.

CURETON, Judge:

Cabana Limited Partnership (Cabana) appeals the master's order denying its motion to compensate its attorneys from the proceeds of an insurance settlement. We reverse and remand.

Farmer's and Mechanic's Savings Bank[1] held first and second mortgages on a timeshare condominium resort developed by Cabana. Greyhound Real Estate Finance Co. (GREFCO) held a third mortgage on the resort and a security interest in various notes and purchase money mortgages generated by the sale of time-share units. Peppertree and GREFCO were

---

[1] Subsequent to the filing of this appeal, Peppertree Resorts, Ltd. (Peppertree) assumed the interest of Farmer's and Mechanic's.

named as loss payees on Cabana's business interruption insurance policy; GREFCO was also named as an insured party.

Shortly after Hurricane Hugo severely damaged the resort in September 1989, Cabana retained the law firm of Tompkins & McMaster to represent Cabana in regards to a claim by Cabana against the business interruption insurance policy. Cabana agreed to pay Tompkins & McMaster an hourly rate of $150, with a bonus undetermined in its amount but contingent on the firm's success at obtaining a settlement. Tompkins & McMaster hired the Baldwin Co., an insurance consulting firm, to assist in the claim, and engaged the law firm of Lindsay & Lindsay as co-counsel, agreeing to pay that firm $10,000 of it's fees.

On April 26, 1990, Peppertree commenced this action, seeking foreclosure of its mortgages and appointment of a receiver. The action was referred to the master for final decision. On October 18, 1990, the master appointed a receiver to preserve the property and represent the interests of Cabana in regards to the expected business interruption insurance proceeds.

Cabana and its insurer settled the business interruption claim on October 30, 1990 for $1,000,000, which was paid to the receiver. Peppertree and GREFCO consented to the settlement.

On November 8, 1990, Tompkins & McMaster submitted to the receiver a bill for $35,000, or 3.5% of the total recovery, for its services in connection with the business interruption claim. Although Cabana agreed to the amount of this bill, Peppertree and GREFCO objected to the payment of any legal fees. On November 28, 1990, Cabana filed a motion requesting the court instruct the receiver to pay Tompkins & McMaster the fees associated with the insurance settlement. By order of September 19, 1991, the master denied this motion.

The master found that 1) Cabana lacked standing to assert its attorneys' claim for payment of fees out of the business interruption insurance proceeds or to assert its attorneys' claim to a lien on these funds; 2) regardless, there were insufficient facts in the record to establish that Cabana's attorneys held an attorneys' lien on the insurance proceeds or that they had created a common fund out of which they might be paid; 3) there was insufficient evidence in the record to establish the

amount of these fees; and 4) the fees requested in payment of Lindsay & Lindsay were inappropriate.

## I.

The master found that the movant Cabana lacked standing to assert the claim that its attorneys be paid out of a common fund. We disagree.

A receiver has those powers given to him by his order of appointment. *Kirven v. Lawrence*, 244 S.C. 572, 137 S.E. (2d) 764 (1964). The order of October 18, 1990 states that the receiver is appointed to represent the interests of Cabana in regards to disbursement of the proceeds of the business interruption insurance policy. Additionally, where a party has a duty to another party and might be held to account for breach of this duty, it has standing to assert a claim on behalf of the second party. *See Charleston Joint Venture v. McPherson*, — S.C. —, 417 S.E. (2d) 544, 549-50 (1992). Because Cabana had an interest in disbursement of money held by the receiver, and had an apparent duty to pay its attorneys for their services in obtaining these proceeds, we conclude that Cabana had standing to request the court to instruct the receiver to pay its attorneys. Non-ownership of its attorneys' rights to payment does not preclude Cabana from requesting the receiver pay its attorneys. *See id.* Accordingly, we conclude that the master erred by finding Cabana did not have standing.[2]

## II.

The master concluded that Cabana's claim that its attorneys should be paid out of the common fund created by the insurance proceeds failed because there was no evidence of an express or implied agreement between the attorneys and the respondents, and because at all times, the interests of each party in the insurance proceeds were in conflict with each other. We disagree.

The general rule is an attorney must look to his client for compensation. *Rankin v. Superior Auto. Ins. Co. of*

[2]Additionally, we observe that the attorneys whose rights were affected by Cabana's motion were before the court and made the motion for Cabana. Equity regards substance rather than form. *Wilkie v. Philadelphia Life Ins. Co.*, 187 S.C. 382, 388, 197 S.E. 375, 378 (1938).

*Florence,* 237 S.C. 380, 384, 117 S.E. (2d) 525, 527 (1960). However, a court of equity may order the payment of reasonable attorney's fees out of a common fund created or preserved by an attorney representing a party when the attorney, at his own expense, has maintained a suit for the recovery or increase of a common fund, or when the attorney has brought a fund into court which other parties are entitled to share. *Petition of Crum,* 196 S.C. 528, 531, 14 S.E. (2d) 21, 23 (1941). However, the allowance of counsel fees out of a common fund is subject to abuse and is permitted only in exceptional cases and when required to promote justice. 196 S.C. at 532, 14 S.E. (2d) at 23. Although the attorney's services might have benefitted all parties, there can be no award of fees where the interests of the parties are adverse. *Bedford v. Citizens & Southern Nat'l Bank of South Carolina,* 203 S.C. 507, 515, 28 S.E. (2d) 405, 407 (1943). Before an attorney may be allowed compensation out of a common fund, there must be a contract of employment, whether express or implied in law, between the attorney and all parties with an interest in the fund. *Crum,* 196 S.C. at 532-33, 14 S.E. (2d) at 23. However, when a party who is unrepresented by counsel will benefit from a common fund and has acquiesced in the actions of another party's attorney in creating this fund, the law will impose a contract on the former to pay for the services rendered. 196 S.C. at 533, 14 S.E. (2d) at 23-24.

It is undisputed that through the efforts of Tompkins & McMaster prior to the appointment of the receiver, the insurer increased its initial settlement offer of $385,000 to a final offer $1,000,000, and that during the year subsequent to Hurricane Hugo and prior to appointment of the receiver, Cabana's attorneys expended considerable hours and energy negotiating this and other claims with Cabana's insurer. Respondents' counsel tacitly acknowledged at oral argument that but for the efforts of Cabana's attorneys, the settlement would have been significantly less. Additionally, although the relationship of Cabana and the respondents has been strictly adversarial since the appointment of the receiver, both prior and subsequent to appointment of the receiver, the respondents, as payees of the insurance proceeds, and Cabana, had a mutual interest in the success of Cabana's attorneys. Our review of the record establishes that although

the respondents' attorneys did not actively participate in the arduous task of negotiating and settling the business interruption insurance claim, they stood ready to benefit from the services of Cabana's attorneys. We conclude that they implicitly consented to this representation of their interests.[3] Accordingly, we find that under the circumstances of this case, equity imposes an implied contract on all parties who will share in the common fund to pay a reasonable fee to Tompkins & McMaster for their services. "It is repugnant to fundamental principles of equity . . . that [the respondents] should reap where they have not sown, free from any legal duty to compensate those who made the reaping possible." *Crum*, 196 S.C. at 533, 14 S.E. (2d) at 24; *see Crown Central Petroleum Corp. v. Elmwood Properties*, 244 S.C. 588, 596, 138 S.E. (2d) 38, 41 (1964).

### III.

The master concluded that there was insufficient evidence to award the $35,000 attorney fee requested by Cabana. Although we find that there was sufficient evidence to establish the existence of an express contract between Cabana and its attorneys, and that an implied contract existed between these attorneys and the respondents, we remand for determination of the amount of the fee.

The affidavits of both William J. Reiner, Cabana's general partner, and George Hunter McMaster, Cabana's attorney, establish that the parties agreed upon an hourly rate of $150, with a bonus contingent upon Mr. Reiner's evaluation of whether the actual insurance recovery exceeded his expectations. Additionally, other affidavits, documents, and letters in the record suggest the nature, duration, and complexity of the services performed by Tompkins & McMaster in regards to

---

[3]Cabana's insurer paid a total of $2,394,000 to Cabana and the receiver on the business interruption and other insurance claims. The respondents have acknowledged, and apparently consented to, the receiver's payment of $117,208 to the Baldwin Company. Relying upon *Rankin*, 237 S.C. at 385, 117 S.E. (2d) at 527, GREFCO asserts that its failure to intervene in settlement of the business interruption claim did not authorize Cabana's attorneys to act on its behalf. However, the facts of *Rankin* are distinguishable from the case before us; the services of Cabana's attorneys were of significantly greater complexity and duration, and the benefit received by the respondents, as payees, and GREFCO as insured, under the business interruption policy, was not merely incidental to the efforts of Cabana's attorneys.

the business interruption claim. The record reveals that Tompkins & McMaster agreed to pay $10,000 to Lindsay & Lindsay as co-counsel. Although there was no evidence of the actual hours expended by Tompkins & McMaster or co-counsel as a basis for the amount of the requested fee, counsel are entitled to a reasonable fee. *Eleazer v. Hardaway Concrete Co., Inc.*, 281 S.C. 344, 350, 315 S.E. (2d) 174, 178 (Ct. App. 1984) (An attorney is entitled to a fee based upon the reasonable value of the services which he has performed in the absence of a contract that establishes the amount of compensation); *see* 7A C.J.S. *Attorney & Client* § 334 at 654 (1980) (The existence of a contract will not preclude the award of attorney fees on a quantum merit basis).[4]

Our Supreme Court has recently spoken regarding the necessity for the trial court to make specific findings of fact when attorney fees are requested and provided for by contract. *Blumberg v. Nealco, Inc.*, — S.C. —, —, 427 S.E. (2d) 659 (1993).[5] Because the record on appeal is insufficient for this court to make such findings, we remand so that the master may take additional evidence in regards to the specific factors enumerated in *Collins* and determine whether $35,000 or another amount is an appropriate fee.

## IV.

Because we have concluded that Cabana's attorneys created and are entitled to compensation out of a common fund, we do not consider whether Cabana's attorneys might be entitled to assert an attorneys' lien on the insurance proceeds, or whether the attorneys' lien would be subordinate to Peppertree's and GREFCO's liens. However, we hold the fee of Tompkins & McMaster shall be paid from the common fund prior to the payment of Peppertree's and

---

[4]In their briefs, both Peppertree and GREFCO acknowledge that a contract existed between Cabana and Tompkins & McMaster, but assert that Cabana failed to prove the amount of the requested fees.

[5]These factors, enumerated in *Collins v. Collins*, 239 S.C. 170, 179, 122 S.E. (2d) 1, 5 (1961), include: 1) the nature, extent, and difficulty of the legal services rendered; 2) the time and labor devoted to the case; 3) the professional standing of counsel; 4) the contingency of compensation; 5) the fee customarily charged in the locality for similar services; and 6) the beneficial results obtained.

GREFCO's liens. *Crown Central Petroleum Corp.*, 244 S.C. at 596, 138 S.E. (2d) at 41.

## V.

GREFCO asserts that because 1) George Hunter McMaster is a limited partner in Cabana and its legal counsel; 2) Cabana remains indebted to GREFCO; 3) the hurricane damage at the resort has not been completely repaired; and 4) because Cabana's loan agreement with GREFCO subordinates any amounts owed by Cabana to its partners to Cabana's debt to GREFCO, that our reversal of the master's finding would be inequitable. Because the firm of Tompkins & McMaster and not George Hunter McMaster undertook representation of Cabana, and because we have otherwise concluded that equity favors the award of fees to attorneys who have created a common fund from which all parties have benefitted, we summarily dispose of GREFCO's assertion in accordance with S.C. Code Ann. § 14-8-250 (1976) as amended, and Rule 220(b)(2), SCACR.

Reversed and remanded.

GOOLSBY, J., and LITTLEJOHN, Acting Judge, concur.