2105

Gary D. BLAKE and Linda Blake, Appellants v. Marion C. CANNON, as Trustee for the Estate of Sherri Elizabeth Cannon, and Marion C. Cannon, Individually, Respondent.

(439 S.E. (2d) 302)

Court of Appeals

*John R. Clarke,* of *Law Offices of John R. Clarke,* North Myrtle Beach, *for appellants.*

*Henrietta U. Golding* and *Daniel J. MacDonald,* both of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for respondent.*

Heard Nov. 4, 1993.

Decided Dec. 18, 1993.

CURETON, Judge:

Gary and Linda Blake brought this action seeking an order requiring Marion Cannon, Trustee, to endorse a $75,000 insurance settlement check, and to declare them the sole owners of the insurance proceeds. Alternatively, the Blakes sought to use the proceeds to pay their attorney, John Clarke, who obtained the settlement. The master held Cannon, as loss payee, was entitled to all of the proceeds, and refused to withhold any portion for Clarke's fees. The Blakes appeal. We affirm.

In July 1988, the Blakes bought the Journey's End Motel in Garden City, South Carolina. They assumed an existing mortgage to C & S Family Credit, Inc. They also borrowed an additional $282,087 from Cannon, and secured the note with a second mortgage and security agreement in favor of Cannon. The security agreement required the Blakes to maintain insurance on the property, and assign all proceeds to Cannon. Cannon assigned a portion of the mortgage payments to Fleet Finance, Inc.

In July 1989, Fleet Finance, Inc. instituted a foreclosure action on the property, as assignee of the rights assigned to it by Cannon.

The property was severely damaged by Hurricane Hugo on September 22, 1989. In February 1990, C & S Family Credit also brought a foreclosure action to foreclose its mortgage.

The Blakes recovered $250,000 on a flood insurance policy. The proceeds from this policy, by court order, were applied to

the debt owed C & S Family Credit. The property was subsequently sold at public sale, and the proceeds distributed pursuant to a court order. Cannon thereafter received a deficiency judgment against the Blakes for $194,300 in October 1991.

In the meantime, the Blakes received $30,863 in proceeds from a fire insurance policy with Northwestern National Casualty Company. Although Cannon was listed as a mortgage holder on the policy, the proceeds check did not include him as a payee, and the Blakes negotiated the check without informing Cannon or applying the proceeds to the mortgage debt. Mr. Blake testified the check included only he and his wife's names because it represented a loss for personal property.

The Blakes also sought recovery on a $300,000 policy with the South Carolina Wind and Hail Underwriting Association.[1] The Association offered a settlement of $3,640, which the Blakes refused. The Blakes negotiated further with the Association without success.[2] The policy stated that any action had to be brought within one year of the loss, so on September 15, 1990 the Blakes asked their attorney, John Clarke, to negotiate a settlement on a contingency basis. Clarke obtained a $75,000 settlement. The settlement check was made out to the Blakes, Clarke, C & S Family Credit, and Cannon, although Clarke had requested the insurer make the check payable only to the Blakes and himself.

The Blakes did not inform Cannon of the settlement negotiations; however, Cannon did contact the Association directly and was assured the claim had been properly filed. After the settlement, Cannon maintained the entire proceeds should be applied to the deficiency judgment, without deducting Clarke's fees.

The master noted that Cannon was entitled to the $30,863 in proceeds from the Northwestern policy, and the Blakes improperly retained them. The master went on to find that

---

[1] Although the policy maximum was $300,000, the policy did not cover the full value of the building, and the insurer, relying on "co-insurance," maintained there was "no conceivable way ... the numbers ... can justify payment of the policy limits in this instance."

[2] Mr. Blake testified the Association proposed a $60,000 settlement, which he also rejected. Clarke testified this offer was subsequently withdrawn, and there was some question whether the agent who made that offer had the authority to do so.

Clarke was aware of Cannon's status as lienholder, and Clarke failed to inform Cannon of the settlement negotiations. The master found "Clarke therefore represented only the Blakes, risking that if the Blakes would not be entitled to the proceeds, the proceeds would not be the source of his fee." The master granted Cannon all rights to the $75,000, plus accrued interest.

## I.

On appeal, the Blakes argue generally that Clarke is entitled to attorney's fees from the insurance proceeds.

Specifically, they argue the master erred in finding the Blakes lacked standing to maintain an equitable lien in favor of Clarke, and that the master erred in focusing simply on the rights of the Blakes and Cannon.[3] It appears from a review of the record the parties by consent tried the issue of Clarke's entitlement to attorney fees. We find no reference to the standing issue raised at trial when the master stated that he would decide whether Cannon or the Blakes were entitled to the $75,000 settlement and also whether Clarke was entitled to an attorney fee from the settlement. Moreover, we observe Clarke personally argued his entitlement to an attorney fee and submitted to cross-examination. Equity regards substance over form. *Wilkie v. Philadelphia Life Ins. Co.*, 187 S.C. 382, 388, 197 S.E. 375, 378 (1938). However, in view of our subsequent finding that Clarke had no equitable lien to an attorney fee, we need not address this argument further.

## II.

We agree with the master, that under the facts of this case, Cannon is not responsible for Clarke's attorney fees and costs. The master rejected the Blakes' argument that he "superinduce" a contract upon Cannon, as Trustee, in reliance upon *Rankin v. Superior Auto. Ins. Co. of Florence*, 237 S.C. 380, 117 S.E. (2d) 525 (1960) and the *Petition of Crum*, 196 S.C. 528, 14 S.E. (2d) 21 (1941). We adopt the master's order in declining to adopt the argument:

---

[3] We do not address the Blakes' argument that the master erred in holding Cannon was entitled to notice and participation in the settlement negotiations with the Association, as such was not the master's holding.

In *Rankin,* the court stated that,

"The simple fact that [an attorney's] services had enured to the benefit of others, with whom there is no contract relation, either directly or through some agent or representative, affords no legal foundation for a charge against other persons." "No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another, by whom he may have been employed. Before legal charge can be sustained, there must be a contract of employment either expressly made or superinduced by the law upon the facts." *Rankin v. Superior Automobile Insurance Company of Florence,* 237 S.C. 380, 117 S.E. (2d) 525, 527 (1960).

For attorney's fees to be charged to a fund in which others are entitled to share, essential conditions must be met. These conditions as set forth in *Petition of Crum, id.,* include:

1. That the attorney must preserve or protect a common fund;
2. That the attorney's services must have aided in creating, preserving or protecting the fund; and
3. That there is a principle of representation or agency as in a class suit, that is, before one may be allowed compensation out of a common fund belonging to others for services rendered on behalf of the common interest there must be a contract of employment, either expressly made or superinduced by the law upon the facts.

*Caughman v. Caughman,* 247 S.C. 104, 146 S.E. (2d) 93, 96 (1965); *citing, Petition of Crum,* 196 S.C. 528, 14 S.E. (2d) 21 (1941). The facts of this case fail to meet the criteria. The Blakes' attorney represented the Blakes only, and his efforts on behalf of the Blakes conferred no benefit upon Cannon as Trustee that he did not already possess.

Additionally, [and importantly] as a result of previous and ongoing lawsuits between the Blakes and Cannon in

which Clarke represented the Blakes, the parties were adversaries and no facts are present to give rise to an implication of representation of Cannon by Clarke. [See *Caughman v. Caughman,, supra; Bedford v. Citizens & Southern Nat'l Bank of South Carolina,* 203 S.C. 507, 515, 28 S.E. (2d) 405, 407 (1943)].

The parties were also adversaries in that their interest in the money differed. Cannon, as Trustee, held a security interest in the property and the proceeds were to be used by him to reduce the debt owed to him by [the] Blake[s]. [The] Blake[s], as evidenced by [their] receiving proceeds from a fire loss claim which should have been turned over to Cannon but were not, [were] apparently attempting to keep the money and not reduce the debt. It is an important fact that Cannon, as Trustee, did not know of Mr. Clarke's actions on behalf of the Blakes' which distinguishes this case from the *Petition of Crum* case. This is especially true in light of the testimony of both Clarke and Mr. Blake that they knew of Cannon's interest and knowingly failed to inform Cannon.

The Blakes argued at oral argument that the facts of this case are similar to those in *Peppertree Resorts, Ltd. v. Cabana Limited Partnership,* — S.C. —, 431 S.E. (2d) 598 (Ct. App. 1993). We disagree. In *Peppertree,* the bulk of the negotiations occurred and the settlement sum was arrived at before an adversarial relationship developed. Additionally, all parties knew of and agreed to the settlement.

### III.

The Blakes also assert Cannon should be estopped or barred by laches from claiming the entire amount of the insurance proceeds. The master did not rule on whether Cannon was estopped or barred by laches, nor did the Blakes raise it in their motion under Rule 59(e), SCRCP. Accordingly, this issue is not preserved for appellate review. *Noisette v. Ismail,* 304 S.C. 56, 403 S.E. (2d) 122 (1991) (issue not properly before appellate court where trial court did not explicitly rule on issue and appellant failed to make 59(e) motion to amend or alter judgment on that ground).

## IV.

The Blakes argue further that the master erred in finding Cannon entitled to the proceeds because the settlement date preceded the date of the deficiency judgment in favor of Cannon. This argument is without merit. Cannon was clearly entitled to the proceeds as the loss payee under the policy and pursuant to an express provision in the parties' contract.

## V.

Finally, the Blakes argue the master erred in noting Cannon should have received the proceeds of the Northwestern policy. The master did not order the Blakes to pay this amount to Cannon. Cannon already had a deficiency judgment against them well in excess of this amount. Rather, the master apparently noted this simply as an additional equity in favor of Cannon. The proceeds from the Northwestern policy were never in issue, and need not be addressed by this Court. *See Nelums v. Cousins,* 304 S.C. 306, 403 S.E. (2d) 681 (Ct. App. 1991) (Court will not address argument that fails to challenge the trial court's ruling on a dispositive issue in the case).

Affirmed.

HOWELL, C.J., and GOOLSBY, J., concur.