PORTER *et al.* v. STEWART *et al.; et vice versa.*

Under the pleadings and the evidence in the case, the court was authorized to make the allowance of attorney's fees and costs, and to tax the same as provided in the decree.

Nos. 5499, 5500. FEBRUARY 15, 1927.

Equitable petition. Before Judge Howard. Fulton superior court. April 28, 1926.

F. M. Stewart instituted a suit in equity in the superior court of Fulton County, naming as parties defendant Equitable Life Assurance Society of the United States, Fourth National Bank of Atlanta, Mrs. M. P. Tagg, and Winfield Partridge. In the original petition it was alleged, that Mrs. M. P. Tagg, on June 6, 1921, being then an agent of said insurance society, and having theretofore become entitled to renewal commissions on policies of insurance sold by her, and being entitled to such additional commissions as might accrue on policies which she might thereafter procure, assigned in writing to the plaintiff her renewal and first-year commissions due and to become due from said insurance society for the amount of $100 per month, together with interest thereon at the rate of eight per cent. per annum,

Costs, 15 C. J. p. 101, n. 14; p. 104, n. 47, 49, 50, 51, 52; p. 105, n. 59.

which assignment was executed as security for a loan of $3,000, made by said plaintiff to Mrs. Tagg; that on the same day notice of the assignment was given to the insurance society by delivering to its agency cashier, H. C. Hull, a copy thereof; that the first nineteen of the notes made by Mrs. Tagg to evidence her debt to Stewart "were paid or caused to be paid by said society as they matured, but the twentieth note maturing February 6, 1923, and the remaining ten notes to and including the thirtieth note, aggregating $1290.25, with interest on each of said unpaid notes from the dates of their respective maturities, remain unpaid;" that said society, on and after February 6, 1923, diverted payments from plaintiff and appropriated them to the satisfaction of some demand of the Fourth National Bank of Atlanta, which demand was alleged to be "subsequent in date and inferior in dignity to the assignment to plaintiff;" that Winfield Partridge had instituted garnishment proceedings against Mrs. Tagg, and served summons of garnishment on said Equitable Life · Assurance Society of the United States; that the renewal commissions accruing to the account of Mrs. Tagg were being claimed by the Fourth National Bank of Atlanta "under and by color of an assignment dated on or about February 3, 1923, executed by the said Mrs. Tagg to said bank or its assignor;" that, irrespective of whether or not the plaintiff held an assignment from· Mrs. Tagg, he was entitled to an equitable lien upon any funds in the hands of the Equitable Life Assurance Society, accruing to her "as first-year commissions and renewal commissions subsequent to the date of plaintiff's lien." The prayers of the petition were, in effect, that title to the funds in the hands of the Equitable Life Assurance Society be decreed to be in plaintiff, or that his equitable lien thereon be set up and established; that he have priority over all defendants named, as to such funds to the extent necessary to satisfy the said outstanding notes; and that judgment be rendered in his favor against all of the defendants for the amount of the said indebtedness with interest.

Attached to the petition as an exhibit was a copy, as follows, of the plaintiff's alleged assignment:

"Atlanta, Ga., June 6, 1921. In consideration of loan having been made to me by Mr. F. M. Stewart, and which I agree to repay in monthly payments on the 7th of each month of $100

and interest, and I hereby agree to turn over my check in above amount each month to Mr. H. K. Hull, cashier of Equitable Life Assurance Society, and he, Mr. Hull, to mail same to Citizens and Southern Bank to pay my note held for collection for account of F. M. Stewart. I have further authorized Mr. Hull to pay these notes out of my renewal or first year's commissions from Equitable Life Assurance Society, in event of my failing to turn over my check to him by the 7th of each month.

[Signed] M. P. Tagg."

"Copy given to Mr. Hull and one kept by myself. M. P. Tagg."

"Noted—Copy received. H. C. Hull, Agency Cashier, By H. C. Hull."

It was upon this paper that the plaintiff sought to recover, his contention being that it operated as an equitable assignment, or that it created an equitable lien on any funds in the hands of the said society. The Fourth National Bank of Atlanta and Equitable Life Assurance Society filed answers. M. P. Tagg, although personally served, interposed no defense, and Winfield Partridge was subsequently eliminated from the litigation by a disclaimer of any interest in the fund. In the answer of the Equitable Life Assurance Society it was averred that the plaintiff held no valid assignment; that notice of the paper which he did hold was never communicated to said defendant; that the Fourth National Bank did hold an assignment, bearing date of February 13, 1923, which had been duly served upon said society; and that in pursuance of said assignment, from and after February 1, 1923, certain amounts had been paid to said bank. Said society further set up the fact that it had in its hands funds accruing to the Tagg account in a substantial amount, and that "as to the funds now in its hands, which have accrued to the account of the said Mrs. Tagg, and which will accrue while this suit is pending, it is a mere stakeholder." The defendant also asked the direction and protection of the court as to any further disbursements of renewal commissions accrued or to accrue to Mrs. Tagg. It was further set up that, according to defendant's information and belief, Mrs. Tagg, on August 12, 1919, executed an assignment to Mrs. Alice May Taylor to secure an indebtedness in the principal sum of $2,200.

J. H. Porter, individually and as administrator of the estate of Mrs. Alice May Taylor, intervened, alleging that he, in one

42

capacity or another, held the assignment of August, 1919, and that he had subsequently acquired for value the Fourth National Bank assignment of February, 1923. He asked that any amounts in the hands of the Equitable Life Assurance Society, as well as any further amounts coming into the hands of said society for the credit of the Tagg account, be paid over to him until such time as the respective amounts secured by said two assignments should be satisfied in full.

All issues of law and fact were referred to an auditor, who heard the case and rendered a complete report, which is in the record before this court. In and by this report the Equitable Society was absolved from any liability except to account for funds in its hands and for such as might accrue. The auditor found, as a matter of law, that F. M. Stewart did not have an enforceable assignment. He found that the assignment of August, 1919, was entitled to prior payment out of the funds in the hands of the Equitable Life Assurance Society, after which the assignment of February, 1923, should be paid; the residue, if any, of the fund accrued and to accrue to be paid to F. M. Stewart because of the fact that he held an equitable lien upon said fund to the extent of the unpaid indebtedness. To the auditor's report the plaintiff interposed exceptions of law and fact. The exceptions of fact were never passed upon by the court, inasmuch as any ruling thereon was rendered unnecessary because the exceptions of law, which were controlling in the case, were overruled. A final decree was entered, establishing the title of the intervenors to the said fund to the extent of the respective demands presented by said interventions, and establishing the equitable lien of F. M. Stewart, to be paid out of the fund after the satisfaction of the amounts secured by the assignments asserted in said interventions. The decree further provided that the Equitable Life Assurance Society should pay into the registry of the court all of the funds in its hands and thereafter accruing, and thereupon be discharged from all liability to any of the parties. In this final decree provision was made for the proportionate payment of certain costs and expenses by J. H. Porter individually and as administrator, and F. M. Stewart. Said costs and expenses included a fee of $1,000, which was awarded to the attorney for the plaintiff "as moving creditor." The main bill

of exceptions complains of so much of the decree as undertakes to assess against J. H. Porter individually and as administrator a pro rata portion of the costs and expenses, and particularly to the award to the attorney for the plaintiff of the amount of fee stated.

*Fuller & Bell,* for Porter et al.

*J. K. Jordan, Randolph, Parker & Fortson,* and *Brandon & Hynds,* contra.

BECK, P. J. (After stating the foregoing facts.) The exceptions contained in the main bill of exceptions go to the allowance of attorney's fees to counsel for the plaintiff in the original petition, and to the assessment of costs and expenses, which are in part assessed against the plaintiff in error. The exception to the allowance of attorney's fees is based upon two distinct grounds. The first ground is that the award is illegal and inequitable, as the court below was without power to make said award under the pleadings and the facts in the case. And the second ground is that the award of $1,000 as attorney's fees, even if any sum is legally justifiable, "is excessive in amount and is an abuse of the discretion of the court, and is contrary to law and equity, for that the total amount of claim represented by the said counsel was alleged to be the sum of $1,900, and that under the law any award of fees should be based upon the amount of interest represented by the counsel to whom such award is made." We are of the opinion that the court was authorized, under the law and the facts, to award fees to counsel for the plaintiff in the court below. Plaintiff had filed this suit to enforce his demand in a court of equity, and the plaintiff in error came in as an intervenor, voluntarily and of his own motion; and after the intervention was allowed, the suit proceeded for the original plaintiff and the intervenors to enforce their rights against the insolvent defendant, Mrs. Tagg, and against Equitable Life Assurance Society. The suit was properly filed upon a valid claim—a claim which was allowed by the final judgment in the case. The assignment to the intervenor was adjudged to be valid and given the preference shown by the judgment; and funds in the hands of the defendant corporation were ordered paid into the registry of the court. True, no receiver was prayed for or appointed, but the money was paid into the registry of the court, as we have

stated; and this was analogous to the appointment of a receiver and the payment over of the funds in question to him. We think that the result obtained by the suit was beneficial to all the parties, that is, to the original plaintiff and the intervenors. In the case of Hobbs v. McLean, 117 U. S. 567, it was said: "When many persons have a common interest in a trust property or fund, and one of them, for the benefit of all and at his own cost and expense, brings a suit for its preservation or administration, the court of equity in which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust, or by proportional contribution from those who accept the benefit of his efforts." It is true that the suit brought by the plaintiff in this case was not originally "in behalf of all" of these interested parties, but the intervenors came in and placed themselves in a position to reap the benefits of the suit. "But courts of equity have power to charge funds realized from, or preserved by, litigation with the costs and expenses of such litigation. . . To authorize the exercise of this power, the litigation in which the costs and expenses were incurred must have been in promotion of the interests of those eventually found to be entitled to the fund. In other words, all the parties must have a common interest in the property or fund involved. Furthermore the results must have been in fact beneficial, and the costs must have been incurred for the benefit of all interested." 15 C. J. 104, § 208; Loudon v. Coleman, 62 Ga. 146. In § 3374 of the Civil Code, relating to the allowance of counsel fees, it is provided that "In claim cases the attorney causing the levy and prosecuting the rights of the plaintiff in fi. fa. shall be entitled to his fees from the proceeds of the property condemned, although older liens may demand and recover the proceeds from the immediate client of such attorney." And in the case of Bullard v. Leaptrot, 57 Ga. 522, it was said: "When a younger fi. fa., by process of garnishment, brings money into court, and an older judgment takes all the money, the expense of bringing in the fund, and all expenses, as well as the net sum realized by the older judgment, should be credited on the older fi. fa." See also Baxter v. Bates, 69 Ga. 587, where the same principle is ruled. We think that the instant case is analogous in principle to the cases referred to, to the extent of making the fund which the court ordered paid

into the registry of the court chargeable with attorney's fees and costs; and the court, having all the pleadings in the case and all the facts, was authorized to award such costs and attorney's fees upon motion in the case, without the filing by the plaintiff of a formal petition or written motion for such allowance.

As stated above, a second attack upon the allowance of attorney's fees was upon the ground that it was excessive. But we can not say as a matter of law that it was so excessive as to require a reversal of the judgment on account of the amount. In paragraph 32 of the auditor's report we find the following: "The Equitable Society holds $2,605 in premiums, and the present value of commissions to accrue after September, 1925, is $5,700,—a total of assets subject to distribution by this court of about $8,305. This fund should and doubtless will be taxed with the costs and expenses of this case and hearing." And in the same paragraph of the report is a finding that Mrs. Tagg is insolvent. In allowing fees to the moving creditor in such a case as this, they should be considered and assessed, in cases authorizing such an assessment, with reference to the interest represented by such counsel, and not be fixed solely by the whole amount to be distributed amongst all the creditors. This was ruled in the case of *Hines* v. *Brunswick & Albany R. Co.*, 50 *Ga.* 563. And while, if the amount claimed by the plaintiff in the court below alone was considered, the amount of the fee finally allowed would be excessive, we think that both the amount of the funds brought into court and the amount of the finding in favor of the original plaintiff should be considered. The intervenors have had the priority of their assignments established and have procured an order and judgment bringing in some $8,000 to be paid into the registry of the court. The court had the pleadings and the evidence, and knew the amount of labor imposed upon counsel who had obtained these results, and the character of the service; and we can not say that the judge abused his discretion in making the allowance of attorney's fees and costs.

*Judgment affirmed on the main bill of exceptions. Cross-bill dismissed. All the Justices concur, except Gilbert and Hines, JJ., disqualified.*