April 3, 1941. The opinion of the Court was delivered by
R.J. Williams, late of the County of Greenville, left a will containing many provisions, among which were there devises: One to Jordan Williams, deceased, his heirs and assigns; another to Mollie Spradley, deceased, her heirs and assigns; and the third to John Williams, deceased, his heirs and assigns. All of the named devisees were known to be dead by the testator at the time of the execution of his will. It was provided therein that all of the property of the testator undisposed of should pass to certain residuary legatees.
The executors named in the will being in doubt as to whether or not the above named devises or legacies might be considered as having lapsed, instituted the main action in this case for the purpose of having the Court construe the will and determine the question. All persons who could possibly claim as devisees under the provisions of the will were made parties. The heirs of the deceased devisees, Jordan Williams and John Williams, did not answer or demur to the complaint or otherwise make any appearance. The heirs of Mollie Spradley answered through their attorney, Mr. J. Wesley Crum, and contended that the devise to Mollie Spradley had not lapsed, but was vested in her heirs and should be distributed to them by the executors.
The Master to whom the whole matter was referred found and held that the legacies had lapsed, and that the three bequests above specified should pass to the residuary legatees. The heirs of Mollie Spradley, represented by Mr. Crum, filed exceptions to the report, and the Circuit Court after a hearing thereon, rendered its decree overruling the findings and recommendations of the Master, and established the right of the heirs of Mollie Spradley, Jordan Williams and John Williams to take their distributive shares under the *Page 531 
will. As already stated, the heirs of Jordan Williams and John Williams were in default throughout the progress of the case, and made no appearance therein at any time. No appeal was taken from the decree of the lower Court.
Thereafter Mr. Crum gave notice to the attorneys for the executors and the attorney for the residuary legatees that he would move the Court for an order allowing him a fee out of the funds distributable among the children of Mollie Spradley, Jordan Williams and John Williams, which group included all those who would reap a benefit from the contest he had waged. The lower Court in passing upon the motion stated that it recognized the skill and ability exercised by Mr. Crum in the trial of the case, and concluded that he was morally entitled to compensation from all those who benefited as the result of his services. That Court also declared that the amount of the fee sought by Mr. Crum was reasonable, but reluctantly reached the conclusion that the claim for fees could not be allowed from the funds belonging to the heirs of Jordan Williams and John Williams, who were not represented by Mr. Crum or by any other counsel. The Circuit Court deemed itself powerless because it felt bound by certain adjudicated cases in this State, to wit: Hand v.Savannah Charleston R. Co., 21 S.C. 162; Hubbard v.Camperdown Mills, 25 S.C. 496, 1 S.E., 5; Wilson v.Kelly, 30 S.C. 483, 9 S.E., 523, and Faile v. Clyburn, 169 S.C. 355,168 S.E., 732.
A review of the authorities shows that a Court exercising equitable jurisdiction may make an allowance of a reasonable fee out of the common fund or property created or preserved, for an attorney representing a party who, at his own expense, has maintained a suit for the recovery, preservation, protection, or increase of a common fund or common property, or has created or brought into Court a fund in which others are entitled to share.
The rule is founded upon the just principle that one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear *Page 532 
their just share of the expenses, including a reasonable attorney's fee; and that the most equitable way of securing such contribution is to make such expenses a charge on the fund so protected or recovered. 14 Am. Jur., Section 47, page 47, 15 C.J., § 208, p. 104; 20 C.J.S., costs § 123, Subd. b, p. 362. Annotation: 49 A.L.R., 1149, 107 A.L. R., 749; Wallace v. Fiske, 8 Cir., 80 F. (2), 897, 107 A.L. R., 726; Sprague v. Ticonic National Bank, 307 U.S. 161,59 S.Ct., 777, 83 L.Ed., 1184.
The rule has its limitations. In order that an attorney may be entitled to compensation out of a common fund, his services must have aided in creating, preserving or protecting the fund. It is also essential that the services prove fruitful to the general class. In other words, if no actual benefit accrues from the services rendered there can be no allowance of fees from the common fund. 14 Am. Jur., Section 75, page 48, 20 C.J.S., costs § 123, Subd. b, p. 362.
It is recognized generally by the Courts that the allowance of counsel fees from a fund is capable of great abuse, and should be exercised with the most jealous caution and circumspection with regard to the rights of litigants, lest thereby the administration of justice be brought into reproach. As was said in Sprague v. Ticonic National Bank [307 U.S. 161,59 S.Ct., 780, 83 L.Ed., 1184], supra, "Such allowances are appropriate only in exceptional cases and for dominating reasons of justice." And it was further declared in that case: "As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility."
The underlying principle in the South Carolina cases cited and relied upon in the Circuit decree is the principle of representation or agency, as in a class suit, that is, before one may be allowed compensation out of a common fund belonging to others for services rendered on behalf of the common interest "there must be a contract of *Page 533 
employment, either expressly made or superinduced by the law upon the facts." In view of the exceptional circumstances of this case we are well warranted in holding that a contract of employment was superimposed by the law upon the facts. It is true that in the contest waged by Mr. Crum he acted primarily in the interest of the heirs of Mollie Spradley and did not profess to act on the theory of representation in behalf of the heirs of Jordan Williams and John Williams, but they are all members of the same class. And although the action insofar as Mr. Crum's representation is concerned did not proceed as a class suit, it has become substantially such by the acts and attitude of the heirs of Jordan Williams and John Williams, in standing by, anxious, ready and willing to claim its benefits. This was so held in the analogous cases of Wallace v. Fiske, supra, and in Porteret al. v. Stewart et al., 163 Ga. 655, 137 S.E., 28.
These two groups of heirs, or most of them were present in the Court when the motion in question was presented and argued. They stood aloof and without counsel, as they did throughout the progress of the main case. The successful termination of that case, due solely to the efforts of Mr. Crum, resulted in the establishment of their rights to share in the fund. But for those services this group of heirs would receive no benefit whatsoever under the will of R.J. Williams, deceased. The decree of the Circuit Court in the main case is the sole basis upon which they must rely for any share in the distribution of the common fund. That they will accept the benefits derived thereunder goes without question. It is repugnant to fundamental principles of equity, under the facts in this case, that they should reap where they have not sown, free from any legal duty to compensate those who made the reaping possible.
This Court has had frequent occasion to indicate its views upon the general subject of devoting funds under its control to the payment for services rendered by attorneys. InWilson v. Kelly, supra, this appears in the Circuit decree: "It sometimes works great hardships that some parties enjoy *Page 534 
the benefit of arduous labors of faithful counsel employed by others and themselves refuse to bear their equal portions of the burdens of the litigation, but I do not know any remedy that the Court can apply." But in the Kelly case
the parties against whom the claim was made were not in default as in the case at bar, were actually represented by their counsel, and doubtless this fact influenced the Supreme Court in affirming the Circuit decree. In fact, in none of the South Carolina cases to which we have referred were the parties in default and unrepresented, as in the case now before us.
In accordance with the foregoing principles. Mr. Crum should be allowed a fee for his services against the common fund distributable to the heirs of Mollie Spradley. Jordan Williams and John Williams. Equity and justice require this.
The Circuit Court deemed itself without jurisdiction to entertain the motion of Mr. Crum because he failed to give legal notice of the motion to the heirs of Jordan Williams and John Williams, and it proceeded to determine the right to compensation only upon the specific request of Mr. Crum. The record shows that Mr. Crum wrote a letter to two of the heirs whom he regarded as representatives of the two groups not represented by him, advising them of the time when and the place where the motion would be heard. A considerable number of these two groups, whose names are not given, were present at the hearing, but others were absent. Although in default as to the main case, we think all of the heirs were entitled to due and legal notice of a hearing affecting funds belonging to them. This being true, the judgment of the lower Court is reversed as to the right of compensation, and the case is remanded so that proper steps may be taken, if the petitioner should be so advised, to bring the heirs of Mollie Spradley. Jordan Williams and John Williams before the Court for a determination of the amount of the counsel fees. *Page 535 
MR. CHIEF JUSTICE BONHAM, MR. ASSOCIATE JUSTICE BAKER and MESSRS. ACTING ASSOCIATE JUSTICES L.D. LIDE and J. STROM THURMOND concur.
 *Page 1