400

792 S.E.2d 907

In the MATTER OF the ESTATE OF Marion M. KAY

Edward D. Sullivan, as Personal Representative of the Estate of Marion M. Kay, Appellant–Respondent,

v.

Martha Brown and Mary Moses, Respondents–Appellants.

Appellate Case No. 2013-002319
Opinion No. 5414

Court of Appeals of South Carolina.

Heard June 3, 2015
Filed June 15, 2016
Withdrawn, Substituted and Refiled November 2, 2016

402

Daryl G. Hawkins, of the Law Office of Daryl G. Hawkins, LLC, of Columbia, for Appellant.

John R. Ferguson, of Cox, Ferguson, & Wham, LLC, of Laurens, for Respondents.

WILLIAMS, J.:

In this cross-appeal, Edward D. Sullivan (Appellant), the personal representative of Marion Milam Kay's estate (the Estate), contests the circuit court's decision to affirm the probate court's order[1] reducing Appellant's compensation as well as denying Appellant's request for reimbursement of certain fees and expenses in connection with the settlement of the Estate. Martha Milam Brown and Mary Leona Milam Moses (collectively "Respondents"), two beneficiaries of the Estate, cross-appeal, arguing the probate court improperly (1) awarded Appellant a fee equivalent to 10% of the Estate when Appellant acted in bad faith; (2) failed to require Appellant to pay all costs and attorney's fees associated with the settling of the Estate; (3) failed to rule on certain beneficiaries' prospec-

---

1. Pursuant to section 62–1–308(a) of the South Carolina Code (Supp. 2014), the probate court's order was appealed to the circuit court, which affirmed the probate court in a Form 4 order. *See* § 62–1–308(a) ("A person interested in a final order, sentence, or decree of a probate court may appeal to the circuit court in the same county, subject to the provisions of Section 62–1–303."). Because Appellant and Respondents essentially take issue with the rulings of the probate court, we frame their arguments accordingly, acknowledging the procedural posture of this case.

tive entitlement to additional proceeds from the Estate should Respondents prevail on appeal; (4) limited Respondents' counsel's request for attorney's fees; and (5) granted Appellant equitable relief when Appellant acted with unclean hands. We affirm in part, reverse in part, and remand.

## FACTS

This appeal arises out of Appellant's administration of the Estate of Marion Milam Kay who passed away on May 3, 2007. In her last will and testament, Kay appointed Appellant to serve as her personal representative (PR). As PR for the Estate, Appellant was charged with the responsibility of distributing Kay's assets, and in turn, Kay's will granted Appellant "reasonable compensation for the services rendered and reimbursement for reasonable expenses." Pursuant to the terms of Kay's will, her assets were distributed as follows: Lisbon Presbyterian Church received 25%; the Lisbon Presbyterian Cemetery Fund received 25%; the Presbyterian Home of South Carolina received 10%; her two step-grandchildren, Bart and Martha Heard, each received 10%; and Respondents each received 10%. Kay's will also granted her neighbor, Charles Copeland, an eight-month option to purchase a one-half undivided interest in an adjoining 330–acre parcel (the Farm) at fair market value. The Estate, valued at $513,491, consisted primarily of Kay's home (the Home) and the ten acres [2] on which the Home was situated, as well as the Farm.

Prior to Appellant submitting a petition for settlement to the probate court, several issues arose in the administration of the Estate. Appellant stated Respondents, who owned the other one-half interest in the 330–acre parcel, were "bitterly disappointed" upon learning they did not inherit Kay's entire one-half interest in the Farm. Respondents claimed Brown was entitled to an additional five acres—as promised prior to Kay's death—and Kay did not have the right to devise her interest to anyone other than the heirs of W.H. Milam.[3] Respondents' claim to a portion of the Farm was at odds with

---

**2.** The Home and 6.238 acres are separated from the remaining 3.762 acres (the Lot) by a public roadway.

**3.** Brown and Moses were W.H. Milam's daughters.

the option to purchase afforded to Copeland in Kay's will. Further, Appellant discovered that the owners of the Farm granted to each other a "right of first refusal" in 1972, which created a potential conflict with Copeland's option to purchase the Farm.

Because Kay bequeathed the Estate to numerous entities with varying interests, Appellant stated he had to determine the most equitable means of accommodating each beneficiary. According to Appellant, three of the residual beneficiaries, whose interests totaled 70% of the Estate, desired to receive their share of the Estate in cash rather than an interest in real estate. In an effort to sort out the competing claims, Appellant hired a surveyor and an appraiser and met several times with Copeland about exercising his option to purchase.

On May 2, 2008, approximately one year after Kay's death, Appellant submitted a proposal to Respondents and Copeland, subject to the approval of all the beneficiaries and the probate court. In the proposal, Appellant recommended conveying five acres to Brown at no cost, conveying the 46.85 acres that adjoined Copeland's land to Copeland at its appraised value, and offering the remainder of the Farm to Respondents at the appraised value. Appellant testified neither Brown nor Moses ever responded to this proposal. After a meeting with all the beneficiaries later that summer, Appellant drafted a second proposal and presented it to Respondents. Appellant stated Respondents again failed to respond or offer a counter-proposal, and at that time, Respondents retained counsel.

After twenty months passed, and without a resolution of the Estate, Appellant filed a partition and declaratory judgment action in circuit court on January 1, 2009. Appellant stated the purpose of filing this action was to determine the rights of the parties—arising out of Copeland's option to purchase, the 1972 right of first refusal, and other claims made by Respondents—and to generally clear title to the property so the Estate could be settled. Appellant amended the complaint on March 4, 2009, at which time Respondents filed a counterclaim asserting a right to five acres. Litigation ensued, and the parties engaged in discovery. After fifteen months, the parties retained a mediator in an attempt to resolve the dispute.

Just prior to mediation, Appellant reached an agreement with Rowland Milam, a relative of Respondents, to purchase the Estate's one-half undivided interest in the Farm, the Home, and the Lot. The Estate was not responsible for any repairs or rollback taxes, and the property was sold using a quitclaim deed. The final purchase price was $367,000, approximately 94% of the 2007–2008 appraised value. All parties consented to the sale of the property. Appellant then made the final distribution of Kay's personal effects and filed the proposal for distribution with the probate court on November 12, 2010.

Respondents requested a hearing, which took place on February 2, 2011, and February 21, 2011. At the hearings, the probate court received testimony and evidence from the parties but disallowed the introduction of an affidavit prepared by Appellant detailing his administration of the Estate and an affidavit from R. David Massey, Esquire, in support of Appellant's request for compensation.

The court subsequently issued an order, finding Appellant "unnecessarily complicated the Estate by insisting on filing a partition action." The court ruled Appellant should not have filed a partition/declaratory judgment action, but rather should have deeded out the Estate to the beneficiaries by a deed of distribution because it found "no necessity for a sale of the real estate." Further, the probate court stated Appellant "unnecessarily complicated the Estate by converting an eight-month option to purchase the Estate's one-half interest in its real estate into an indefinite right to purchase and by giving the option holder the right to buy only a portion of the property contrary to the Will."

The probate court then ruled on Appellant's entitlement to fees and commissions, finding Appellant's claims for commissions were not adequately documented because he "had no method or formula for determining the amount for the four draws he gave himself other than by pulling a figure out of the air." Appellant's total draws from the Estate on the date of the hearing amounted to $93,775, or 18.3% of the Estate's value, which the court found to be far greater than the statutory presumption of 5%. As a result, the court held "the commissions sought by [Appellant] [we]re clearly excessive,"

particularly when Appellant offered no alternative for valuing his services. The court acknowledged Appellant "did an excellent job in securing the sales price for the real estate" and had "exemplary credentials and good standing in the Bar," but this alone did not automatically justify the relief requested. In addition, the probate court found Appellant did not act in bad faith.

The probate court approved a prior payment to Appellant's law firm, Collins & Lacy, P.C., for $13,499.58 and found the firm was entitled to an additional $12,306.80. However, the court questioned the necessity of 204.6 hours of paralegal work. The probate court disallowed Appellant's request for attorney's fees for Appellant's counsel, noting that—although counsel represented Appellant well—it did not believe the Estate should pay these attorney's fees. Further, the probate court denied Appellant's request for costs pertaining to the petition for settlement and Appellant's expert witness fees. The court did, however, award attorney's fees to Respondent's counsel in the amount of $19,860, to be paid from the Estate.

Based on the probate court's findings, it concluded Appellant had a right to retain $51,300, or approximately 10% of the Estate's value. As a result, Appellant was required to refund the Estate—within thirty days of the order—all additional commissions, totaling $42,475.[4] After the probate court denied Appellant's Rule 59(e), SCRCP, motion to reconsider, Appellant and Respondents appealed to the circuit court. Following a hearing on July 19, 2013, the circuit court issued a Form 4 order in which it affirmed the order of the probate court and required all parties to bear the costs of appeal to the circuit court. Appellant and Respondents then appealed to this court.

**STANDARD OF REVIEW**

On appeal from a final order of the probate court, the circuit court must apply the same standard of review that an appellate court would apply on appeal. *In re Howard*, 315 S.C. 356, 361, 434 S.E.2d 254, 257 (1993). The standard of review applicable to cases originating in the probate court depends upon whether the underlying cause of action is at law

---

4. The probate court held if Appellant completed the winding up of the Estate, then he would be entitled to an additional compensation of $2,500 that could be deducted from the amount owed to the Estate.

or in equity. *In re Estate of Hyman*, 362 S.C. 20, 25, 606 S.E.2d 205, 207 (Ct. App. 2004); *In re Thames*, 344 S.C. 564, 568, 544 S.E.2d 854, 856 (Ct. App. 2001).

 This appeal stemmed from Appellant's petition for settlement of the Estate, including a determination of Appellant's entitlement to commissions, expenses, and costs; each party's entitlement to attorney's fees; and Respondents' motion to remove Appellant as PR of the Estate. Both parties concede—and we agree—that the affirmative relief sought by the parties lies in equity. *See Morris v. Tidewater Land & Timber, Inc.*, 388 S.C. 317, 324, 696 S.E.2d 599, 603 (Ct. App. 2010) ("An action for an accounting sounds in equity."); *Dean v. Kilgore*, 313 S.C. 257, 259, 437 S.E.2d 154, 155 (1993) (finding action to remove a personal representative of estate was an equitable action). If a matter is decided by the probate court and affirmed by the circuit court, this court applies the two-judge rule. *Dean*, 313 S.C. at 259–60, 437 S.E.2d at 155–56. When the circuit court concurs with the probate court in an equity case, the standard of review for this court is whether any evidence reasonably supports the findings of the court below. *Id.* at 260, 437 S.E.2d at 155–56.

## LAW/ANALYSIS

### I. Appellant's Appeal

Appellant raises the following issues on appeal, arguing the circuit court erred in affirming the probate court because the probate court improperly (1) required Appellant to refund a portion of his compensation when Appellant acted reasonably, his compensation was substantiated by the evidence, and a refund would unjustly enrich certain beneficiaries; (2) unjustly enriched one or more beneficiaries by returning Appellant's compensation; (3) denied Appellant his due process rights because Respondents did not properly request that the probate court review his compensation; (4) denied Appellant's request for fees and expenses in connection with the hearing to settle the Estate; (5) improperly awarded Respondents' counsel attorney's fees; and (6) denied Appellant's Rule 59(e), SCRCP, motion to reconsider. We agree in part.

## A. Appellant's Fee

■ Appellant first claims the probate court improperly reduced his compensation for administering and settling the Estate because he acted reasonably and his actions were substantiated by the evidence. We disagree.

Pursuant to section 62–3–719(a) of the South Carolina Code (Supp. 2014),

> Unless otherwise approved by the court for extraordinary services, a personal representative shall receive for his care in the execution of his duties a sum from the probate estate funds not to exceed five percent of the appraised value of the personal property of the probate estate plus the sales proceeds of real property of the probate estate received on sales directed or authorized by will or by proper court order, except upon sales to the personal representative as purchaser.

However, "[t]he provisions of this section do not apply in a case where there is a contract providing for the compensation to be paid for such services, or *where the will otherwise directs*, or where the personal representative qualified to act before June 28, 1984." S.C. Code Ann. § 62–3–719(c) (Supp. 2014) (emphasis added). Item V(3) of Kay's will addressed the PR fee schedule and stated, "For its services as personal representative, the individual personal representative shall receive reasonable compensation for the services rendered and reimbursement for reasonable expenses."

In Appellant's petition for settlement to the probate court, he requested $93,775 for commissions already paid and $13,447.05 for additional commissions yet to be paid. The probate court concluded compensating Appellant for the amounts requested would total 21% of the Estate's value, which was far beyond the statutorily mandated 5% pursuant to section 62–3–719(a). Because Appellant failed to provide a legitimate basis for his fees, the probate court concluded a reduction of $42,475 was warranted, bringing Appellant's commission to 10% of the Estate's value.

On appeal, Appellant has included all of the invoices, time sheets, affidavits, and correspondence in support of his claim that he is entitled to the compensation he requested from the probate court. Appellant also cites to Item VII of Kay's will to

support his administrative decisions underpinning his fees. Item VII authorizes the PR

> to exercise all powers in the management of [the] Estate ... upon such terms and conditions as to [Kay's] personal representative may seem best, and to execute and deliver any and all instruments and to do all acts which [her] personal representative may deem proper or necessary to carry out the purposes of this [ ] will.

We recognize that Appellant encountered difficulties in administering certain assets of the Estate and made efforts to rectify these interests. While we do not take issue with Appellant's belief that he acted reasonably and in the best interests of the Estate, we also do not believe the probate court's decision to decrease Appellant's compensation based on the value of the Estate and the court's view of the evidence is without support. Accordingly, we find the probate court acted properly in establishing a reasonable compensation for Appellant's services as PR and affirm the circuit court's decision to uphold the probate court's award of compensation to Appellant in the amount of $51,300.

### B. Unjust Enrichment

■ Next, Appellant argues the circuit court's decision to require him to return a portion of his compensation unjustly enriches certain beneficiaries who requested cash from the Estate and have benefitted from the services of Appellant. We disagree.

Appellant states "a majority in interest of the residuary beneficiaries (70%) desired that the PR liquidate the real estate so that they could receive a cash distribution rather than an undivided interest in real estate. Accordingly[,] the [p]robate [c]ourt's ruling unjustly enriches these beneficiaries." As discussed in Respondents' cross-appeal, we do not believe requiring Appellant to return a portion of his fees to the Estate would unjustly enrich these beneficiaries because these funds are properly part of the Estate's assets. *See Dema v. Tenet Physician Servs.–Hilton Head, Inc.*, 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009) ("A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another."). Therefore, Appellant's theory of restitution is inapplicable to the case at hand. *See*

*Ellis v. Smith Grading & Paving, Inc.*, 294 S.C. 470, 473, 366 S.E.2d 12, 14–15 (Ct. App. 1988) ("Unjust enrichment is usually a prerequisite for enforcement of the doctrine of restitution; if there is no basis for unjust enrichment, there is no basis for restitution."). In addition, we find it would be inequitable to punish these beneficiaries under the doctrine of unjust enrichment based upon their desire to have cash—which they are rightfully entitled to and which Appellant consented to—as opposed to a share in the real estate. Consistent with Kay's will, a return of these monies would be divided among these beneficiaries in accordance with the distribution scheme provided in her will. Accordingly, we affirm the circuit court's ruling to affirm the probate court on this issue.

## C. Due Process

■ Appellant contends the probate court erred in requiring him to return a portion of his compensation because Respondents failed to comply with the proper procedure for contesting Appellant's entitlement to his compensation, thereby depriving him of reasonable notice and an opportunity to be heard. We disagree.

Section 62–3–721(a) of the South Carolina Code (Supp. 2014) outlines the proper procedure for contesting a PR's compensation:

After notice to all interested persons, on petition of an interested person or on appropriate motion if administration is under Part 5 [sections 62–3–501 et seq.], . . . the reasonableness of the compensation determined by the personal representative for his own services, may be reviewed by the court. Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds.

Appellant contends Respondents failed to file a formal petition in violation of section 62–3–721. Although our review of the record uncovers no formal petition, we conclude the parties were aware of the issues that would be brought before the probate court at the petition for settlement, including Respondents' disagreement with Appellant's compensation. *See Blanton v. Stathos*, 351 S.C. 534, 542, 570 S.E.2d 565, 569 (Ct. App. 2002) ("Procedural due process mandates that a litigant be placed on notice of the issues which the court is to

consider."). The following dialogue between the probate court and the parties affirms our conclusion on this issue:

Court: Who's the moving party in this [case]?

Appellant's Counsel: As I understand it, Ms. Moses and Ms. Brown have requested the hearing, your Honor.

. . . .

Court: Apparently closing documents were sent out and as per statutory right, interested parties have the right to demand [a] hearing concerning the closing of the Estate. And evidently, [Respondents' counsel], that's what you've done?

Respondents' Counsel: Yes, sir.

. . . .

Court: Okay . . . Let me ask you, [Appellant's counsel]. Were all of the beneficiaries under the will noticed of today's hearing?

Appellant's Counsel: Yes they were, your honor.

. . . .

Court: [W]hen I've done these hearings when there's been a demand, it typically in most cases just makes a little more sense, and I think the process goes a little smoother, is if the—because typically, it is a complaint about something the PR's done or not done. So typically it runs a little smoother if we start the case off as if you [Appellant] are the moving party. So, if there's not a big hang-up with that, that's how I would like to do it.

Based on the foregoing, we hold any purported defects in notice were waived at the hearing when the parties acknowledged the issues before the court and proceeded with the hearing. *See Stickland v. Consol. Energy Prods. Co.*, 274 S.C. 554, 555, 265 S.E.2d 682, 683 (1980) ("A general appearance constitutes a voluntary submission to the jurisdiction of the court and waives any defects and irregularities in the service of process."); *Connell v. Connell*, 249 S.C. 162, 166–67, 153 S.E.2d 396, 398–99 (1967) (stating if a defendant, by his appearance, "asks any relief which can only be granted on the hypothesis that the court has jurisdiction of his person, then he has made a general appearance . . . and waives any defect in the jurisdiction arising either from the want of service on

the defendant or from a defect therein"). Further, based on the length of the hearing, as well as the exhibits and documentation submitted to the probate court, we find Appellant had ample notice and an opportunity to be heard and, thus, affirm the circuit court's decision on this issue. *See Blanton,* 351 S.C. at 542, 570 S.E.2d at 569 ("Procedural due process contemplates notice, a reasonable opportunity to be heard, and a fair hearing before a legally constituted impartial tribunal.").

### D. Appellant's Counsel's Attorney's Fees and Expenses

■ Appellant claims the circuit court erroneously denied his request for his counsel's attorney's fees, expert witness fees, and certain costs for time and preparation on the petition for settlement. We disagree.

In support of his claim for attorney's fees and expenses, Appellant cites section 62–3–720 of the South Carolina Code (Supp. 2014), which states, "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred."

While we agree that section 62–3–720 affords a PR reimbursement for costs and attorney's fees in connection with the administration and protection of the Estate, we find the probate court properly determined which fees and costs would be borne by the Estate and which would be borne by Appellant. We concur with the probate court's finding that Appellant's counsel's fees primarily stemmed from the contest between Appellant and Respondents over the amount of his compensation and, thus, were properly assessed against Appellant in his individual capacity. Further, we conclude this statute was intended to cover attorney's fees and expenses in connection with prosecuting and defending claims against the Estate, as opposed to the situation before the probate court. *See* S.C. Code Ann. § 62–3–715(20) (Supp. 2014) (providing a PR, "acting reasonably for the benefit of the interested persons, may properly ... prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of his duties").

To that end, we find the probate court properly approved the attorney's fees already paid to Collins and Lacy in the amount of $13,499.58 and approved of an additional $12,306.80 to Collins and Lacy for attorney's fees and costs that were incurred as part of Appellant's administration of the Estate. We agree with the probate court that those fees and costs were properly borne by the Estate and find that award reasonable given the circumstances and the overall value of the Estate. We also note that—unlike sections 62-3-715(20) and -720—section 62-3-721 makes no provision for the payment of a PR's attorney's fees or expenses connected with a proceeding to review the PR's compensation. *See* S.C. Code Ann. § 62-3-721(a) (Supp. 2014) ("After notice to all interested persons, . . . the propriety of employment of any person by a personal representative including any attorney, auditor, investment advisor, or other specialized agent or assistant, the reasonableness of the compensation of any person so employed, or the reasonableness of the compensation determined by the personal representative for his own services, may be reviewed by the court. Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds.").

We also find the probate court properly considered the nature of the testimony and the role of other witnesses in choosing which fees to assess against the Estate and against Appellant. The probate court denied Appellant's request for expert witness fees for an appraiser and consultant, both of whom testified at the hearing. While the probate court required Appellant to pay for the appraiser's and the forestry consultant's expert witness fees connected with the hearing, it also required the Estate to pay $5,000 for the appraisal of Kay's property and $750 for the forestry consultant's work valuing the timber on Kay's property. We agree the appraisal and consultant work were costs directly connected with the valuation of the Estate, and as such, were legitimate expenses properly paid out of the Estate's assets. We further concur with the probate court's decision to assess the expert fees against Appellant as their work product and valuations were not contested issues at the hearing. Based on the foregoing, we uphold the circuit court's decision to affirm the probate court on this issue.

### E. Respondents' Counsel's Attorney's Fees

■ Appellant contests the probate court's decision to award Respondents' counsel attorney's fees based on the common fund doctrine. We agree.

■ "The common fund doctrine allows a court in its equitable jurisdiction to award reasonable attorney's fees to a party who, at his own expense, successfully maintains a suit for the creation, recovery, preservation, or increase of a common fund or common property." *Layman v. State*, 376 S.C. 434, 452, 658 S.E.2d 320, 329 (2008) (citing *Johnson v. Williams*, 196 S.C. 528, 531, 14 S.E.2d 21, 23 (1941)). "Attorneys' fees awarded pursuant to the common fund doctrine come directly out of the common fund created or preserved." *Id.* (citation omitted). The rationale for awarding attorneys' fees in this manner is based on the principle that "one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses." *Id.* (citation omitted).

■ However, the allowance of attorney's fees out of a common fund is subject to abuse and is only permitted in exceptional cases when required to promote justice. *Johnson*, 196 S.C. at 532, 14 S.E.2d at 23. Although the attorney's services might have benefitted all parties, fees cannot be awarded when the interests of the parties are adverse. *Bedford v. Citizens & S. Nat'l Bank of S.C.*, 203 S.C. 507, 515, 28 S.E.2d 405, 407 (1943). Before an attorney may be compensated out of a common fund, a contract of employment must exist, whether express or implied in law, between the attorney and all parties with an interest in the fund. *Johnson*, 196 S.C. at 532–33, 14 S.E.2d at 23.

Citing to the common fund doctrine, the probate court awarded Respondents attorney's fees and held, "Equity requires that all heirs pay for the work of Defendants' attorney[ ] because his work preserved and protected a common fund[ ] not just for the benefit of Defendants, but for all heirs." We find the probate court improperly applied this doctrine.

Respondents' decision to hire counsel was based upon their disagreement with the division of the Estate and the amount

of Appellant's compensation. Because the common fund doctrine requires all interested parties to have the same interests, we do not believe the probate court should have required the Estate to pay for Respondents' attorney's fees. Several beneficiaries were in favor of selling the real estate as opposed to an in-kind distribution. Specifically, Penelope Arnold, the director of the Presbyterian Home of South Carolina's charitable foundation, testified "[the Presbyterian Home] do[es] not have the wherewithal financially to pay property taxes, to keep the land up, which we would be responsible for doing or paying someone to do that. And so the preference is always to sell real estate and receive the proceeds." Arnold further stated that, at a prior meeting with all the beneficiaries to resolve issues with the Estate's division, she and Reverend Hunter, of Lisbon Presbyterian Church, were not well-received by Respondents based on their preferences over the Estate's division. Lisbon Presbyterian Church also preferred to receive its 25% share of the Estate in cash.

In addition, neither of these beneficiaries took issue with Appellant's compensation as did Respondents. Furthermore, while Respondents' counsel's efforts resulted in monies being returned to the Estate, which arguably was for the benefit of all the beneficiaries, we find there was no "contract of employment, whether express or implied in law, between the attorney and all parties with an interest in the fund." *Peppertree Resorts, Ltd. v. Cabana Ltd. P'ship*, 315 S.C. 36, 41, 431 S.E.2d 598, 601 (Ct. App. 1993). If all the beneficiaries agreed on the distribution plan and took issue with Appellant's compensation, then the common fund doctrine would clearly apply. However, based on the foregoing evidence, we conclude Respondents—not the Estate—should have borne the cost of Respondents' representation. As a result, we reverse the circuit court's decision to uphold the award of Respondents' counsel's attorney's fees pursuant to the common fund doctrine.

### F. Rule 59(e) motion

Last, Appellant claims the circuit court erred in affirming the probate court's denial of Appellant's Rule 59(e), SCRCP, motion. We find this argument to be without merit.

In the circuit court's order, it did not rule on whether the probate court properly denied Appellant's post-trial Rule 59(e) motion. Rather, the circuit court—as the court of next review—properly addressed the issues that the parties raised to the probate court. As a result, we find Appellant's attempt to raise this as legal error to be misplaced and without merit. *See* S.C. Code Ann. § 14–8–250 (Supp. 2014) (noting "the [c]ourt need not address a point which is manifestly without merit"); Rule 220(b)(2), SCACR ("The Court of Appeals need not address a point which is manifestly without merit.").

## II. Respondents' Cross–Appeal

Respondents raise the following issues on cross-appeal, claiming the circuit court erred in affirming the probate court because the probate court (1) improperly awarded Appellant a fee equivalent to 10% of the Estate when Appellant acted in bad faith; (2) failed to require Appellant to pay all costs and attorney's fees associated with the settling of the Estate; (3) failed to rule on certain beneficiaries' prospective entitlement to additional proceeds from the Estate should Respondents prevail on appeal; (4) limited Respondents' counsel's request for attorney's fees; and (5) granted Appellant equitable relief when Appellant acted with unclean hands. We disagree and address each argument in turn.

### A. Appellant's Fee & Bad Faith

Respondents first claim the probate court erred in awarding Appellant a 10% commission because Appellant acted in bad faith. We disagree.

As stated above, we find the probate court properly considered the requisite factors and statutory considerations in its decision to award Appellant a fee equivalent to 10% of the Estate's value. While we recognize section 62–3–719(a) limits a PR's fee to 5% of the Estate, we believe the specific circumstances and competing interests that otherwise prolonged the settling of "a fairly basic" estate merited an imposition of a higher fee. Further, we find a 10% fee was "reasonable compensation" for Appellant's services as stated in Kay's will.

Although Respondents contend Appellant acted in bad faith in the administration of the Estate, we find these allegations

to be unsubstantiated and a mischaracterization by Respondents regarding Appellant's efforts as PR. Respondents claim Appellant acted in "violation of his fiduciary duty," "boost[ed] his commission," "bilk[ed] the Estate," "loot[ed] the Estate," and generally incurred "shocking charges ... against the Estate." Although Appellant likely could have settled the Estate in a timelier and less costly manner, Appellant presented substantiated evidence that he worked diligently over a course of three years to accommodate all interested parties. Further, as noted by the probate court in its order and affirmed by the circuit court on appeal, Appellant has "exemplary credentials and good standing in the Bar." Respondents' contentions that Appellant acted in bad faith and violated his fiduciary duty to the Estate are not well-founded, particularly when Appellant submitted evidence he consulted with legal counsel on the proper courses of action in administering the Estate; Appellant attempted to meet with all the beneficiaries and create a compromise prior to filing a partition action; and Appellant "did an excellent job in securing the sales price for the real estate."

Based on the foregoing, we find Appellant did not improperly exercise his power in connection with the Estate and presented sufficient evidence to demonstrate he did not breach his duty to the Estate and its beneficiaries. *See* S.C. Code Ann. § 62–3–703(a) (Supp. 2014) (stating a PR has the "duty to settle and distribute the estate ... as expeditiously and efficiently as is consistent with the best interests of the estate" and the "successors to the estate"). Accordingly, we affirm the circuit court's decision to uphold the probate court's findings on this issue.

### B. PR's Court Costs, Attorney's Fees, and Post–Judgment Interest

 Next, Respondents contend the probate court erred in failing to require Appellant to pay all costs associated with the proceedings before the probate court, including attorney's fees, court costs, and post-judgment interest. We find this argument unpreserved for our review.

Respondents' argument on this alleged ground of error is conclusory, only stating it would be "grossly unfair for the heirs to pay for the PR's attempts to increase his compensa-

tion and further obscure his wrongdoing," and "[i]f the PR chooses to violate his duties and maximize his own interests at the expense of the Estate by filing' an appeal, the heirs, who gain nothing by the appeal, should not suffer because of that." We find these two sentences are insufficient to assert legal error and decline to address Respondents' argument on this ground. *See Bennett v. Investors Title Ins. Co.*, 370 S.C. 578, 599, 635 S.E.2d 649, 660 (Ct. App. 2006) (noting when an appellant fails to cite any supporting authority for a position and makes conclusory arguments, the appellant abandons the issue on appeal); Rule 208(b), SCACR (stating that, for appellate review of an issue to occur, the issue must be set forth in a statement of issues and argument).

## C. Limitation of Recovery

■ Respondents argue the probate court erred in failing to rule on certain beneficiaries' prospective entitlement to additional proceeds from the Estate should Respondents prevail on appeal. We find this issue is not properly before this court.

Respondents did not raise this issue either to the probate court or to the circuit court. Accordingly, we find it is unpreserved for review on appeal. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit court] to be preserved for appellate review." (citation omitted)). Further, Respondents cite no legal authority to support their position, instead relying on a brief factual argument, which we find insufficient as a matter of law. *See Mulherin–Howell v. Cobb*, 362 S.C. 588, 600, 608 S.E.2d 587, 593–94 (Ct. App. 2005) (finding party abandoned an issue on appeal by failing to cite any supporting authority and making only conclusory arguments).

## D. Respondents' Attorney's Fees

Next, Respondents claim the probate court improperly limited their attorney's post-trial request for additional attorney's fees, citing to the common fund doctrine. Because we reverse the probate court's award of attorney's fees to Respondents' counsel, we decline to address this issue. *See Futch v. McAl-*

*lister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding appellate courts need not address remaining issues when the resolution of a prior issue is dispositive).

### E. Unclean Hands

■ Last, Respondents claim the probate court erred in granting Appellant equitable relief because Appellant acted with unclean hands. We find this argument is unpreserved for our review.

Neither the probate court nor the circuit court ruled on whether Appellant acted with unclean hands. Respondents' failure to raise this issue to either court precludes this court's review on appeal. *See Wilder*, 330 S.C. at 76, 497 S.E.2d at 733 ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit court] to be preserved for appellate review." (citation omitted)); *Rock Hill Nat'l Bank v. Honeycutt*, 289 S.C. 98, 104, 344 S.E.2d 875, 879 (Ct. App. 1986) (stating because the theory of unclean hands was not pled or raised to the trial judge, it could not be raised on appeal).

### CONCLUSION

Accordingly, we **AFFIRM** the circuit court's decision upholding the probate court's order as to all issues except Respondent's counsel's attorney's fees. Because the common fund doctrine does not apply under these facts, we **REVERSE** the award of attorney's fees to Respondents' counsel. Based on our conclusion that Respondents—not the Estate— must pay for Respondent's counsel's attorney's fees, we **REMAND** the issue of each beneficiary's share of the Estate to the probate court for a determination consistent with this court's opinion.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

HUFF, J., concurs.

FEW, A.J., concurring in part and dissenting in part:

I concur with the result reached by the majority in all but two respects. First, I would reverse the decision to deny

Sullivan's request for attorney's fees and expenses for the petition for settlement. In my view, the probate judge's denial of Sullivan's request for fees and expenses was driven by his disagreement with Sullivan's decision to file a partition action and ultimately sell the estate's interest in the real estate. Sullivan had the right to partition the land pursuant to Kay's will and the probate code and, thus, it was within his discretion to do so. Additionally, as the probate court found in its order and the majority explains in Part II. A of its opinion, Sullivan did not act in bad faith during his administration of the estate.

Moreover, the probate code required Sullivan to file a petition for settlement. *See* S.C. Code Ann. § 62-3-1001(a)(3) (Supp. 2015) (requiring a personal representative to file "an application for settlement of the estate to consider the final accounting or approve an accounting and distribution and adjudicate the final settlement and distribution of the estate"). Moses and Brown requested the hearing on Sullivan's petition for settlement, and at the hearing, Sullivan defended his decision to seek a partition and sell the real estate. Because the probate code provides a personal representative who "defends or prosecutes any proceeding in good faith" is "entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred," S.C. Code Ann. § 62-3-720 (Supp. 2015), and Sullivan filed the petition for settlement and appeared at the hearing in good faith, I would find he is entitled to reasonable attorney's fees and expenses.

Second, I question whether the standard of review in an appeal from an equity case is any different simply because two judges have made the same factual determination. The first time the phrase "two-judge rule" was used in this State was in *Nienow v. Nienow*, 268 S.C. 161, 172, 232 S.E.2d 504, 510 (1977). Describing the substance of the rule, the *Nienow* Court stated "concurrent findings of fact by the trial judge and master are binding on this Court unless they are without evidentiary support or against the clear preponderance of the evidence." 268 S.C. at 170, 232 S.E.2d at 509. That description differs from the ordinary standard of reviewing equity cases only by the use of the word "clear." *See Lewis v. Lewis*, 392 S.C. 381, 390-91, 709 S.E.2d 650, 654-55 (2011) (explaining

that in equity appeals there is "a burden on an appellant to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court"). The use of the word "clear" in *Nienow* does not distinguish the rule recited there from the rule applied in *Lewis*. As former Chief Justice Toal noted in her concurrence in *Lewis*, "our standard of review in a particular case depends on the nature of the underlying action and has little to do with the semantics concerning the method by which the case reaches the Court." 392 S.C. at 398, 709 S.E.2d at 658 (Toal, C.J., concurring). I would apply the standard of review from *Lewis*, and I would reach the same result as the majority on all issues except Sullivan's request for attorney's fees and expenses for the petition for settlement.